Alex PERESIPKA, Plaintiff-Appellee,

v.

ELGIN, JOLIET AND EASTERN RAILWAY COMPANY, Defendant-Appellant.

No. 11138.

United States Court of Appeals,
Seventh Circuit.

Oct. 13, 1954.

Rehearing Denied Dec. 14, 1954.

Harlan L. Hackbert, Stevenson, Conaghan, Velde & Hackbert, Chicago, Ill., of

counsel, Glenn D. Peters, Peters & Highland, Hammond, Ind., for appellant.

Oscar C. Strom, Strom & Whitted, of counsel, Hoy D. Davis, Gary, Ind., for appellee.

Before MAJOR, SWAIM, and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This is an action brought under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., to recover damages for injuries claimed to have resulted when a truck driven by a fellow worker backed into plaintiff, a tractor driver employed at defendant's Gary, Indiana Kirk Yard, as he was waiting for his tractor to be filled with gasoline at the start of his day's work on June 12, 1948. There was a trial before the court and a jury, which returned a verdict for the plaintiff for $25,-000. Defendant's motions for judgment notwithstanding the verdict, or, in the alternative, for a new trial were overruled, and judgment was entered on the verdict. Defendant appeals.

Defendant in its answer admitted the allegations of the complaint that it was at the time of the accident in question, engaged in the transportation of freight in interstate commerce, that as a part of its system, it maintained a railroad yard in Gary, Indiana known as "Kirk Yard," and that, on and prior to the date of the accident, plaintiff was employed by it as a trucker in said Kirk Yard in transporting materials and parts for repairing cars used by it in interstate commerce.

There was evidnce tending to prove the facts now set forth.

Plaintiff's duties consisted of driving a tractor delivering supplies to carpenters and tools and repair parts to car repairmen, and occasionally using the tractor to push cars along the repair tracks to clear paved passageways and to enable the repairmen to get around and between the cars in order to do their repair work and also to enable other employees to pass between the cars.

He began work on the morning of June 12, 1948, and took a tractor assigned to him from the garage to the defendant's gasoline pump where its tank was filled with gasoline by the attendant, another employee of the defendant. This was required to be done by the plaintiff each morning. Plaintiff held the hose in the tank of the tractor while the attendant operated the pump. When the tank was filled, plaintiff was putting on the gas tank cap when a truck of the defendant, driven by a fellow employee of plaintiff, backed into plaintiff, crushing him between the back of the truck and the tractor. The truck struck the plaintiff in the small of his back, crushing and squeezing him until he lost consciousness.

Plaintiff was taken to Mercy Hospital at Gary, where he came under the care of defendant's doctors. One of them, Dr. Donchess, a witness for defendant, testified that his diagnosis on that day was a contusion with a superficial abrasion of the right lower chest and a contusion of the left arm, and that there was an old arthritic condition. Plaintiff complained of pain in the right lower chest and the lower part of the sternum. He did not complain at that time of pain in the lower back. X-ray pictures were taken and, according to Dr. Donchess, they did not reveal any evidence of fracture, pathology of the bone, or any dislocation. He was discharged from the hospital on the morning of June 14, 1948. Thereafter plaintiff received physiotherapy treatments at the hospital on four occasions, ending July 6. On each of these occasions Dr. Donchess examined plaintiff, who made no complaint of pain or difficulty in the lower back. He was told to go to work on July 7, Dr. Donchess being of the opinion that he was able to do his regular work, as the abrasion had completely healed and he was greatly improved. Dr. Donchess examined him on July 22, 1948, and found that he complained of pain over the lower part of his sternum. An examination was essentially negative. More X-ray pictures were made, and they showed no evidence of fracture or bone pathology of the ribs, sternum, "heart, or lungs" (sic).

Thereafter Dr. Donchess saw plaintiff on July 28, September 25 and 27, and October 5, 1948. On July 28, plaintiff was still complaining of pain in the lower part of the sternum and the upper part of the abdomen and stomach area. X-rays were then taken at the hospital "to rule out any intrinsic or any lesion of the stomach, or any lesion of the diaphragm, such as a rupture," and the X-rays were negative.

On cross-examination Dr. Donchess testified that there were no symptons of severe internal injuries or of aggravation of the old arthritis.

Doctors Cooper and Bennett, also witnesses for defendant, examined plaintiff and testified there was no evidence of a fracture and no disability resulting from the accident. Dr. Cooper thought there was a possibility of a gastro-intestinal disorder which was responsible for the man's complaints. From Dr. Turner's X-rays, made at Dr. Bennett's request, of plaintiff's cervical, dorsal and lumbar spine, the left shoulder and the ribs, Dr. Bennett found no pathology due to trauma in the humerus, clavicle, scapula or ribs, but found an extensive old osteoarthritis generalized throughout the entire spine, "a common condition in a man 60 years of age," but no evidence of fracture or injury due to trauma. He testified further that he found no symptons of ruptured intervertebral discs or of aggravation of the pre-existing arthritis.

Plaintiff's only medical witness was Dr. Albert C. Field, by whom plaintiff was examined at his attorney's direction a month before the trial in 1953, which was nearly 5½ years after the accident. According to Dr. Field, plaintiff complained of pain in the back and X-rays taken by him showed a scoliosis of the spine, "which alone wouldn't bother him a lot." He also found arthritis in the lumbar spine and bridging between the second and third vertebrae. Upon examination he found some spasticity in the lower back, some tremor of the tongue, and positive leg-raising tests, "which indicates an inflammatory condition." In response to a hypothetical question he testified there might or could be a causal connection between the described accident and the conditions he found. In his opinion plaintiff was unfit for manual work. He testified that there was no evidence of fracture and that he could not tell how long the scoliosis had been present.

The errors relied on arise out of the court's failure to direct a verdict for the defendant, rulings during the argument to the jury and the modification of an instruction tendered by defendant.

1. The court instructed the jury as a matter of law that the plaintiff at the time and place of the happening in question, came within the provisions of the Federal Employers' Liability Act. Defendant contends that in so doing the court erred. At the close of the plaintiff's evidence the court denied defendant's motion for a directed verdict under which defendant contended "there was a failure of proof on this essential issue."

Defendant urges that, as a matter of law, the evidence fails to show a real or substantial relationship between plaintiff's work and interstate transportation.

The Federal Employers' Liability Act, as amended in 1939, 45 U.S.C.A. § 51, provides:

"Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

■ The evidence as to the duties imposed on plaintiff and the circumstances of the accident were proved by plaintiff's witnesses. Defendant called no witnesses on these subjects. The facts established by this evidence and the admissions of defendant's answer show that the cars being repaired by defendant's employees, and which, to facilitate their repair, were moved along railroad tracks by the tractor operated by plaintiff, were cars used in interstate transportation and that, therefore, plaintiff was then performing duties in the furtherance of interstate commerce or duties directly or closely and substantially affecting such commerce. Shelton v. Thomson, 7 Cir., 148 F.2d 1, at page 3. There is no evidence to the contrary. Accordingly, as a matter of law the District Court was correct in its instruction to the jury and its denial of the motions of the defendant insofar as they involved the question which we are now discussing. There was no issue of fact on this subject which could have been properly submitted to the jury.

2. Defendant admits that, because it offered no evidence to rebut plaintiff's version of the accident, for all practical purposes any controversy on the issues of negligence and contributory negligence was eliminated from the case and that there was left to the jury only one question: whether plaintiff's physical condition at the time of trial was caused by the accident. It contends that on this issue it was denied a fair presentation of its contentions, for two reasons.

a. The first reason advanced by defendant is that the court permitted plaintiff's counsel to argue to the jury, over defendant's specific objection, that defendant had "subsidized" the doctors and "bought off" the only available competent doctors who might have testified for the plaintiff.

The evidence shows that, in addition to the doctors to whom the defendant tion to the doctors to whom the defendant sent him, plaintiff went to Dr. Goldstone and "perhaps two other doctors in Gary," and to Dr. Kuhn and Dr. Kenney in Hammond. It points out that these doctors were not called as witnesses for the plaintiff and "under the Indiana statute their testimony was privileged and unavailable to the defendant, Burns' Indiana Statutes § 2–1714." Dr. Field, plaintiff's only medical witness, was from Chicago, Illinois.

On cross-examination of Dr. Field, considerable time was spent by defendant's counsel in an obvious attempt to cast some doubt upon the value of his testimony. He was interrogated at length upon the nature of his practice, with what hospitals he was connected, how frequently he testified, whether lawyers sent him cases, the extent of his surgery practice, the number of first aid patients sent to him, whether he sent cases to other doctors, and similar matters.

In his closing argument plaintiff's counsel, referring to defendant, said "they sent him from one doctor to another" and "if this man had been given treatment, instead of sending him around from one doctor to the other—," and further "they complain because he hasn't testified what bills he has paid with these doctors. Where are these doctors' bills? We don't know who has paid them." He then asked "are you going to call a subsidized physician to testify in your case?" To this defendant's counsel objected saying, "there is nothing warranting the inference that we have subsidized the physicians." Whereupon plaintiff's counsel continued to argue "they certainly have used up the good doctors in the town and there is no one else for us to call * * * so we have to reach into Chicago and Dr. Field is an expert. * * * Now they are going to damn him because he came from Chicago * * * Am I going to send my client to some doctor in Gary? Right away he would say, 'What doctors have you been to?' 'Donchess and Cooper.' Right away, he picks up the phone, 'Donchess, what's the matter with this fellow?'—'Leo, what's the matter with this fellow?'" The court overruled the objection saying that "each party can draw whatever inferences are proper."

██ We think there was no error committed as the argument was reasonable in view of the evidence. Moreover the report of proceedings presented by defendant's counsel to the District Court for approval omits the argument made by defendant's counsel to the jury, to which plaintiff's closing argument was a response. Obviously, counsel for plaintiff was referring to his adversary's argument. The defendant's argument is not contained in the report of proceedings filed by defendant. It does not purport to relate all of the proceedings before the district court. The certificate attached thereto specifically states that it contains a transcript "of certain proceedings had." We are therefore unable to properly and fully consider defendant's objection to the argument of plaintiff's attorney. For all we can learn from the record before us, the argument complained of may have been justified by the preceding argument of defendant's counsel. It was the duty of defendant to preserve in the record all matters which might bear upon the errors assigned by it.

In Metropolitan Life Ins. Co. v. Banion, 10 Cir., 106 F.2d 561, at page 568, the court said:

> "Furthermore, no record was made of the arguments of counsel for the company and it, therefore, is impossible to know whether the arguments in question were provoked by arguments of opposing counsel. Ordinarily a judgment will not be reversed on the ground of improper argument where all arguments are not in the record so that it can be determined whether the parts drawn in question were provoked or made in response. Murphy v. United States, 8 Cir., 39 F.2d 412; Vause v. United States, 2 Cir., 53 F.2d 346; Chicago & N. W. R. Co. v. Kelly, 8 Cir., 74 F. 2d 31; United States v. Dilliard, 2 Cir., 101 F.2d 829."

Likewise in Morgan v. Sun Oil Co., 5 Cir., 109 F.2d 178, at page 181, it was said:

> "The appellants also seek reversal of the case because of alleged improper remarks of counsel in argument to the jury. * * * The appellants have brought up only a partial record and there is no way to determine that the argument of counsel was not supported by or responsive to the entire record. Since the record is silent on the point error will not be presumed. Hartford Accident & Indemnity Co. v. Baugh, 5 Cir., 87 F.2d 240; Maryland Casualty Co. v. Reid, 5 Cir., 76 F.2d 30."

██ In this state of the record, defendant cannot successfully urge that error was committed in overruling its objections to the arguments of plaintiff's counsel in his closing argument to the jury.

b. The second reason advanced by defendant is that the court failed to instruct the jury adequately as to the burden of proof on the medical relationship of plaintiff's physical condition to the accident.

Defendant's instruction No. 1 which was tendered to the court, reads:

> "The jury are instructed that, with respect to the ailments claimed for the plaintiff in this case, the law requires of him, before he can recover for any ailment, that he show, by a preponderance of the evidence, not only that such ailment exists, but also that it is the result of the accident in question and does not proceed or arise from any other cause. The jury have no right to guess or conjecture that any ailment complained of by the plaintiff is the result of the accident, but before the plaintiff can recover for such ailment, the plaintiff must show by the greater weight of the evidence that it does not proceed or arise from any other cause. The burden is not upon defendant to show that it does arise from any other cause, and even if the evidence is evenly balanced between the plaintiff and defendant on that question, you cannot allow the plaintiff for any such ailment."

Actually the court did give to the jury the following instruction:

"You are instructed that, with respect to the ailments claimed by the plaintiff in this case, the law requires of him, before he can recover for any ailment, that he show, by a preponderance of the evidence, not only that such ailment or sickness exists, but also that it is the result of this happening in question and does not proceed or arise from some other cause."

It will be noted that the court's instruction was practically the same as the first sentence in defendant's instruction No. 1.

The court also instructed the jury as follows:

"The burden in this case is on the plaintiff to prove the material allegations of his complaint by a preponderance of the evidence: * * *"

and also:

"By a preponderance of the evidence, that is meant that the evidence must preponderate, must weight heavier, on the side of the party having the burden. By a fair preponderance it does not necessarily mean the greater number of the witnesses, but the greater weight of the evidence taken altogether. If there is no preponderance, if the evidence on an issue is equally balanced, on one side as much as on the other, then there is no preponderance and the party having the burden to establish that particular issue must fail."

Obviously the part of defendant's instruction No. 1 which the court omitted contained repetitious statements of the law which the court did give in other instructions. Therefore the court's failure to give defendant's instruction No. 1 in full was not error.

For the aforesaid reasons, we find that no error was committed by the District Court and therefore its judgment is affirmed.