Alex PERESIPKA, Plaintiff-Appellee,

v.

ELGIN, JOLIET AND EASTERN RAIL-WAY COMPANY, Defendant-Appellee.

Michael A. Gerrard, Intervening Petitioner-Appellant.

No. 11533.

United States Court of Appeals Seventh Circuit.

March 14, 1956.

Michael A. Gerrard, James E. Hastings, Chicago, Ill., for appellant.

Oscar C. Strom, Hoy D. Davis, Gary, Ind., Harlan L. Hackbert, Chicago, Ill., Glenn D. Peters, Hammond, Ind., for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

This proceeding involves a claim by intervening petitioner (referred to as Gerrard or intervenor) for attorney's fees and attorney's lien. Alex Peresipka (referred to as plaintiff) brought suit in the United States District Court for the Northern District of Indiana against the Elgin, Joliet and Eastern Railway Company (referred to as the railroad or defendant) to recover damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. for injuries sustained while an employee of defendant. After a $25,000 judgment for plaintiff was affirmed by this court, 217 F.2d 182, defendant filed a petition February 21, 1955, reciting among other things that a settlement agreement had been reached but that there was a question as to the rights of certain attorneys in said judgment by reason of asserted liens, with the request that the amount agreed upon be paid to the clerk of the court, that the judgment be satisfied, that the attorneys be notified and that the petition be set for hearing for a determination of the claims for attorney's fees. The court, in compliance with the request contained in the petition, entered an order authorizing payment to the clerk in satisfaction of the judgment, with directions that defendant serve notice upon Gerrard of the matter before the court. Thereupon, Gerrard filed his intervening petition, reciting facts upon which he predicated his request that one-third of the judgment settlement on deposit with the clerk be ordered by the court paid to him under a contract of employment which he as an attorney had with plaintiff.

Subsequently, a hearing was had upon defendant's petition, together with the intervening petition filed by Gerrard, in which attorneys for these parties as well as those for plaintiff participated. The court rendered a memorandum opinion, decided the issue involved adversely to intervenor and, on June 1, 1955, entered the following order:

"The claim of Michael A. Gerrard for attorney's fees in his intervening petition to assert a lien therefore is denied."

From this order the appeal comes to this court.

Plaintiff had a cause of action against defendant by reason of injuries sustained by him June 12, 1948. Intervenor was and is a member of the Illinois Bar, practicing his profession in Chicago, Illinois. Plaintiff was recommended to him by one Frish, a representative of the union to which plaintiff belonged. On March 31, 1949, plaintiff by a written contract retained intervenor to prosecute his claim against the railroad. Among other things the contract stated:

"In consideration for services rendered and to be rendered I agree to pay a sum equal to 33⅓% of whatever may be collected from said claim by suit, settlement or otherwise. No Charge Is to Be Made Unless Recovery Is Had."

On April 8, 1949, Gerrard duly served and filed with defendant a notice of attorney's lien pursuant to the Illinois Attorney's Lien Act of 1909, as amended, Ill.Rev.Stat.1941, ch. 13, sec. 14, S.H.A. ch. 13, § 14, Jones Ill.Stats.Ann. 9.13. Plaintiff went to Gerrard's office in Chicago several times (plaintiff admits four times) after the contract was signed. Gerrard took a statement from him regarding the nature of his injuries and the circumstances surrounding the same, employed an investigator who investigated the case and to whom Gerrard paid

$130.00, was billed by a doctor for an x-ray examination of plaintiff and, on March 20, 1950, filed on behalf of plaintiff in the Superior Court of Cook County, Illinois.

After this suit was filed, one Orlow, an Indiana attorney, visited Gerrard's office and, at his request, was permitted to examine the file on plaintiff's case. Later Orlow prepared a letter directed to the Chicago Bar Association, in which it was stated in effect that Gerrard and defendant were engaged in a conspiracy to deprive plaintiff of his rights to recover damages against the defendant. This letter was signed and sworn to by plaintiff, but at the hearing he denied making such a charge and stated that he did not know what was in the letter. The letter was received by the Chicago Bar Association in April 1950, and in the following month Gerrard was notified by a committee of the Association that the complaint had been "dismissed as unwarranted."

In November 1951, Gerrard received notice that plaintiff would appear pro se and move to dismiss the Superior Court action filed by Gerrard, and the suit was dismissed a few days later. In the meantime, on March 11, 1951, Orlow, unknown to Gerrard, had filed suit for plaintiff in the United States District Court for the Northern District of Indiana, which resulted in the $25,000 judgment, the amount of which was paid into court as stated and against which intervenor claimed an attorney's lien. At the hearing, the court admitted certain documentary evidence and heard the testimony of intervenor and plaintiff.

The facts as above related are not in dispute. There is a dispute as to whether intervenor's contract of employment was signed in Indiana or Illinois. Intervenor testified that plaintiff came to his office in Chicago on March 31, 1949, where the contract was signed, that he never saw plaintiff before that time and that he had never been to Gary to see any person in a professional capacity. On the other hand, plaintiff testified that the union official Frish and Gerrard came to his hotel room in Gary, and that the contract was signed there. There was also a dispute relative to the x-rays made by Dr. Zeitlin in Chicago. Plaintiff stated that he was sent to the doctor by the claim agent of the railroad, while Gerrard testified that he sent plaintiff to the doctor. As noted, however, it is not disputed but that Gerrard received a report from the doctor, as well as a statement for his services.

While perhaps not material to any issue involved, it should be stated in fairness to plaintiff's present counsel, Hoy D. Davis and Oscar C. Strom, that they had no connection with the filing of the case in the Indiana court or with the circumstances by which Orlow became attorney for plaintiff. The suit was there filed by Orlow who subsequently was permitted to withdraw as plaintiff's counsel when Davis and Strom were employed, and it was they who tried the case, procured the judgment and represented plaintiff on appeal to this court. Orlow did not appear at the hearing in the instant matter.

Judge Luther M. Swygert in his memorandum opinion pointed out the undisputed fact that the $25,000 judgment was the result of the employment by plaintiff of attorneys Davis and Strom, and to some degree of Orlow, that Gerrard did not participate in the action in the Indiana court, that he rendered no services in connection therewith and that he did not practice his profession in the courts of that state. The opinion concluded by stating:

"Consequently, the lien asserted by Gerrard is not enforceable under the Indiana attorney's lien statute and as this is his sole remedy under his intervening petition, his claim for attorney's fees as a lien on the judgment rendered in this court must be denied."

Intervenor contends that he was entitled to have his claim for lien adjudicated in accordance with the Attorney's Lien Act of Illinois, while both plaintiff and defendant attempt to sustain the order under attack on the premise that in-

tervenor's rights must be determined, as the court below did, in accordance with the Attorney's Lien Act of Indiana. The real issue, however, is whether the Illinois law is to be given effect, because intervenor claims nothing and concedes that he is without remedy under the Indiana Attorney's Lien Act. Sec. 4–3619, Burns' Indiana Statutes, 1946 Replacement, 1955 Cumulative Supplement. This is for the reason that the Indiana Act is applicable only to "Any attorney practicing his profession in any court of record in this state," and intervenor is not and never was so engaged. That Act also provides only for a means of obtaining a lien upon a judgment after it has been rendered and it is then available only to an attorney who rendered service in connection with its procurement.

The situation being as stated, we need give no further consideration to the Indiana Act or the construction placed upon it by the courts of that state. No question was raised in the court below but that intervenor acquired a valid lien under the Illinois Act. Plaintiff in this court suggests, however, in rather feeble fashion that intervenor as plaintiff's attorney was discharged and that he is without remedy except in an action against plaintiff to recover on quantum meruit, citing the decision of this court in Gardner v. Atchison, Topeka and Santa Fe Railway Company, 226 F.2d 109. That case does not support plaintiff's broad assertion. We concluded there that the attorney had lost his right to a lien because he voluntarily withdrew from the case and consented to the substitution of other counsel. In our discussion, at page 111, we cited numerous Illinois cases to the effect that the discharge of an attorney by the client "without good cause" does not defeat a lien for attorney fees.

■ We find no basis in the record for a holding that Gerrard was discharged for "good cause." The most that can be said, according to plaintiff's testimony, is that he became dissatisfied because of Gerrard's delay in filing suit. However, the suit was filed well within the period of limitation and, even though plaintiff thought its filing was being delayed, we think that such delay in and of itself did not constitute "good cause." Moreover, as the record clearly shows, Orlow, the Indiana lawyer, persuaded plaintiff to employ him by pretending that intervenor was in a conspiracy with defendant to defeat plaintiff's claim. There is hardly room for doubt but that this was the reason for the change of attorneys by plaintiff. In any event, the record does not show that intervenor was discharged either wrongfully or rightfully. In this relation, the most favorable testimony of plaintiff was that on March 22, 1950 he stated to Gerrard in a registered letter, "He wanted to know just definitely when he is going to file the case. If not, he said he will take another lawyer." As already noted, the case had been filed by Gerrard on March 20, 1950, two days before this letter.

■ Another question belatedly raised is that the contract was signed in Gary, Indiana, that it was not an Illinois contract and that the Illinois Lien Act, therefore, is without application. In the alternative, it is suggested that the question as to whether the contract was signed in Indiana or Illinois presents an issue of fact which should be resolved by the District Court. We think both of these contentions are without merit for the reason that irrespective of whether the contract was signed in Indiana or Illinois, the record unmistakably discloses that it was to be performed in the latter state. Intervenor probably could not have filed the suit in any other jurisdiction and certainly he could not have done so in Indiana where he was not admitted to practice. As noted, plaintiff visited Gerrard's office in Chicago numerous times and discussed with him whether the case should be filed in the state or federal court in Illinois. Notice of the attorney's lien and service of summons which followed filing of the complaint in the state court were served upon defendant in Illinois. The railroad in its brief concedes, "If Gerrard had fully performed his contract, Illinois would have

been the place of performance, but, as it finally developed, Indiana was the place where his client's claim was finally reduced to judgment." This is true, but the fact that performance was not completed in Illinois was no legal fault of Gerrard; it was that of plaintiff who permitted himself to be led astray by the questionable tactics of Orlow, an Indiana attorney.

■ It is the general rule, so far as we are aware, that contracts are to be construed and given effect in accordance with the law of the state wherein performance is to take place. In George v. Haas, 311 Ill. 382, 386, 143 N.E. 54, 55, the court stated:

"Parties are presumed to contract with reference to the law of the state where their contract is to be performed, and to be governed by such law, rather than the law of the state where the contract was entered into. [Citing many cases.]"

The rule appears no different in Indiana. In Johns-Manville, Inc., v. Thrane, 80 Ind.App. 432, 141 N.E. 229, 230, the court stated:

"Affirmatively speaking, we hold that a contract made in one state, in contemplation of performance in another, is subject to the law of the state in which it is to be performed, 13 C.J. 249. And a contract of employment made in Illinois, to be performed in Indiana, is in effect an Indiana contract and subject to the laws of Indiana, including the Compensation Law."

To the same effect, as the rule pertains to Indiana, see Miller v. Tiffany, 1 Wall. 298, 68 U.S. 298, 17 L.Ed. 540, 543.

Smith v. Louisville and Nashville Railroad Company, 313 Ill.App. 396, 40 N.E. 2d 539, is another case where the rule has been applied under facts similar to those of the instant situation. There, the employee as the result of injuries had a claim for damage against the defendant railroad. He was a resident of Kentucky but while in Ohio entered into a contract of employment with lawyers from East St. Louis, Illinois (one lawyer was from St. Louis, Missouri), to prosecute his claim against the railroad under the Federal Employers' Liability Act. The Illinois attorneys served notice on the railroad of an attorney's lien and filed suit in the City Court of East St. Louis. Thereafter, settlement was made with plaintiff on behalf of the railroad by its claim agent, without the knowledge of plaintiff's attorneys. The attorneys brought suit against the railroad to recover on their contract of employment. Numerous defenses were interposed, including "that the contract of the plaintiff attorneys with the original plaintiff was void for a number of reasons, including the fact that the State of Ohio, where the contract was made, had no statutory provision for an attorney's lien * * *." The court denied this contention on the theory that the contract was to be performed in Illinois, and in doing so stated, 313 Ill.App. at page 404, 40 N.E.2d at page 544:

"The suit having once been filed in a Court of this State, such lien, under the Illinois Statute, at once attached to the cause of action and could not thereafter be destroyed by the settlement which was made by defendant, without the consent of such attorneys. Under such attorney's lien law the contract of employment and service by such attorneys of notice of lien, operated as an assignment of a 40% interest in any judgment that might be rendered in the case, or in the proceeds of any settlement that might be made by defendant with the client of such attorneys claiming the lien."

(This case was reversed by the Supreme Court, 381 Ill. 55, 44 N.E.2d 841, on another ground, that is, that the City Court of East St. Louis was without jurisdiction to entertain the action.)

There is no claim but that intervenor strictly complied with the requirements of the Illinois Attorney's Lien Act. The question then arises as to what legal right he acquired in relation to any recovery which might be made by plaintiff,

either by suit or otherwise. Such rights have often been considered by the Illinois courts, but we think that reference to a few of such cases will suffice. In Baker v. Baker, 258 Ill. 418, 421, 101 N.E. 587, 588, the court stated:

"By serving the notice claiming a lien the attorney in effect becomes *a joint claimant* with his client in any judgment or decree that may be rendered, or in the proceeds of any settlement that may be made by the client, and to the extent of the amount of his fee *has the same interest in such proceeds, judgment, or decree as his client,* and is entitled to his pro rata share thereof. In short, when the notice claiming a lien is served on the defendant or debtor under this statute, it has the effect of *an assignment of an interest in any judgment or decree* that may be rendered, or *in the proceeds of any settlement* that may be made by the client, and is such an assignment that the defendant or debtor is bound to respect. This creates a new and a substantial right in favor of the attorney, and *divests the client of substantial rights that he theretofore possessed.* [Italics supplied.]"

See also Catherwood v. Morris, 360 Ill. 473, 480, 196 N.E. 519, and McArdle v. Great American Indemnity Company, 314 Ill.App. 455, 463–464, 41 N.E.2d 964. It has been held, also, under a variety of circumstances that an attorney who has perfected a lien under the Act cannot be deprived of his right or interest because he is not the attorney of record in the suit brought to recover on the client's claim, Gorton v. Norris, 319 Ill. App. 525, 49 N.E.2d 645, because the attorney is refused the right by the client to participate in the prosecution of the claim, Goldberg v. Perlmutter, 308 Ill. App. 84, 87, 31 N.E.2d 333, and that there is no right to a jury trial on a dispute between an attorney and his client as to the enforcement of the former's lien under the Illinois Attorney's Lien

Act, Zazove v. Wilson, 334 Ill.App. 594, 597, 80 N.E.2d 101.

Thus, under the Illinois Attorney's Lien Act as construed by the courts of that state, intervenor became a joint claimant and by assignment acquired a one-third interest in any judgment rendered in favor of plaintiff or in the proceeds thereof. It would thus appear that he acquired a right or interest the same as if plaintiff had made an assignment to him of a one-third interest in any other property or property rights.

Having determined intervenor's right under the law of Illinois, we come to the important question as to whether he was entitled to enforce that right in the proceeding from which this appeal comes. Intervenor contends that the Indiana court was required to give effect to the Illinois law by recognizing his claim or interest in the proceeds of the judgment in the custody of the court. This contention is based upon two grounds, (1) that under the rules of conflict of laws an Indiana court should give effect to the law of Illinois, and (2) in any event, that Indiana is required to do so under the Full Faith and Credit clause of the Constitution of the United States, Article IV, Sec. 1.

The argument of neither plaintiff nor the railroad is persuasive on the first issue—neither meets it head on—and no response is made to the second issue, in fact it is not mentioned in their briefs. Cases are cited which hold that a client has a right to discharge his attorney at any stage of a proceeding and that under certain circumstances the attorney's right to recover fees is limited to quantum meruit. We need not cite or discuss such cases because they did not involve the rights of an attorney under the Illinois Attorney's Lien Act and are clearly inapplicable. It is also suggested that Gerrard was without right to intervene in the instant proceeding but that his action, if any, was against the plaintiff. This suggestion, if adopted, would result in an anomalous situation. The railroad, recognizing that intervenor had perfected a lien under the Illinois Act,

properly satisfied the judgment by paying the proceeds into court. This it did for its own protection. In the petition which it filed it stated, among other things, "That on April 8, 1949 the defendant was served with a notice of attorney's lien in accordance with the statutes of the State of Illinois, by Michael A. Gerrard, an attorney at law of Chicago, Illinois * * *. That by reason of the service of notice of attorney's lien as aforesaid the said Michael A. Gerrard claims or may claim to have a lien upon the judgment and the proceeds of the settlement herein." The petition among other things prayed "that this petition be set for hearing for a determination of the claims for attorney's liens upon the said judgment and the proceeds thereof," and requested that notice be served upon Gerrard relative thereto. The court set the matter for hearing and by its order provided that "the defendant is directed to serve notice of said hearing upon Michael A. Gerrard, of Chicago, Illinois, by personal service upon him * * *." Notice was served as directed and in response thereto Gerrard filed in the proceedings what was labeled an "intervening petition," which set forth his asserted rights under the Illinois Attorney's Lien Act. Under these circumstances, it is not discernible how it can be thought that the matter was not properly before the court for its adjudication.

Moreover, it is doubtful if Gerrard could have asserted his rights in any other forum. In McCallum v. Baltimore and Ohio Railroad Company, 379 Ill. 60, 39 N.E.2d 340, under facts almost identical to those of the instant case except that the Illinois attorney failed to assert his right in an Indiana court, the court held that he had lost his claim or lien against the railroad. More specifically, it was held that the judgment of the Indiana court disposing of the proceeds of a judgment was res adjudicata as to all parties who participated therein or who had an opportunity and failed to do so. The court stated 379 Ill. at page 69, 39 N.E.2d at page 344:

"In such cases the jurisdiction of the court rests exclusively upon the situs of the res and although one of the incidents of the judgment entered may be to determine the personal rights in the res of a person who is beyond the jurisdiction of the court, the judgment is binding as between the parties. Plaintiff's right to a lien against the proceeds of the Burton judgment was adjudicated in the circuit court of Daviess county, Indiana, and the judgment entered in that court is an effective bar to plaintiff's recovery in this action."

It perhaps is true, as suggested by plaintiff, that an Indiana court was not obligated to follow this Illinois case but, in our view, the reasoning is sound. It could hardly be otherwise in view of the fact that the court ordered that Gerrard be notified and thus given an opportunity to assert his rights in the proceeds of the judgment which the railroad had paid into court.

As heretofore noted, plaintiff, as did the District Court, cites Indiana cases construing the Attorney's Lien Act of that state, which we think are beside the issue. Neither the Indiana Act nor the cases of that state furnishes any answer to the contention that Gerrard was entitled to protection in an Indiana court of rights bestowed upon him by the law of Illinois. While we doubt if it is material, the Lien Acts of the two states are not in conflict. In Illinois, as shown, the Lien Act creates a property right in the attorney from the time the statutory notice is served upon the debtor, while in Indiana, the right cannot be perfected until after the rendition of a judgment.

So far as we are aware, courts generally, including those of Indiana, recognize and apply the rules of conflict of laws. In Wabash R. Co. v. Hassett, 170 Ind. 370, 83 N.E. 705, 709, the court so recognized. In so doing it stated:

"In reaching this conclusion we approve the modern and generally accepted doctrine that to justify our courts in refusing to enforce a right

of action accruing under the laws of another state as against the policy of this state the prosecution of such action must appear to be against good morals or natural justice, or prejudicial to the general interests of the citizens of this state."

See also Draper v. Zebec, 219 Ind. 362, 376, 37 N.E.2d 952, 38 N.E.2d 995. Evidently there was nothing in the rights which intervenor sought to maintain which was "against good morals or natural justice, or prejudicial to the general interests of the citizens" of Indiana. In our view, and we so hold, the court should have given effect to the law of Illinois as announced in its Attorney's Lien Act as construed by its courts. There being no question but that intervenor was in full compliance with the Illinois law or as to his rights under that law as set forth in his intervening petition, it follows that he was entitled to the relief sought.

Furthermore, aside from the principles of conflict of laws, we are of the view under the reasoning of Hughes v. Fetter, 341 U.S. 609, 71 S.Ct. 980, 982, 95 L.Ed. 1212, that an Indiana court was required under the Full Faith and Credit clause of the Constitution of the United States to give effect to the law of Illinois and the rights of intervenor which flowed therefrom. Section 1 of Article IV provides:

"Full Faith and Credit shall be given in each State to the public Acts * * * of every other State."

Pursuant to this constitutional mandate, Congress has provided in Title 28 U.S.C.A. § 1738:

"Such Acts * * * shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken."

In the Fetter case an action was brought under the Wrongful Death Act of Illinois, S.H.A. ch. 70. §§ 1, 2, in the State of Wisconsin for a death which occurred in Illinois. All parties were citizens of Wisconsin. The case was dismissed because the Wrongful Death Act of Wisconsin, St.1949, § 331.03, contained a provision " 'that such action shall be brought for a death caused in this state.' " The dismissal was affirmed by the Supreme Court of Wisconsin on the ground that the Wrongful Death Act of that state established a public policy against the entertainment of suits brought under the Wrongful Death Act of another state.

The Supreme Court of the United States reversed in a sharply divided opinion (5 to 4), holding that even though the Wisconsin Death Act was interpreted as barring death actions occurring out of the state, nevertheless Wisconsin was required to give full faith and credit to the public acts of another state, including the Wrongful Death Act of Illinois. No purpose could be served in an attempt on our part to dissect in detail either the majority or dissenting opinions. The majority opinion pointed out that except for the possibility of constructive service on defendant in Illinois, Wisconsin may well have been the only state in which jurisdiction could have been obtained. We think the instant situation is clearly analogous. As we have heretofore shown, Indiana furnished the sole forum where intervenor could have had his rights adjudicated. If he had failed to appear in that court and assert his rights, he would have lost his lien and all interest in the proceeds recovered. McCallum v. Baltimore and Ohio Railroad Company, 379 Ill. 60, 69, 39 N.E.2d 340.

The underlying reasoning of the dissenting opinion in the Fetter case would also appear to require the application of the Full Faith and Credit provision. In the dissenting opinion a distinction was made between tort and contract actions in relation to the obligation of a state to give effect to the law of another state. The dissenting opinion, after commenting on the fact that the case before the court was an action in tort stated 341 U.S. at page 617, 71 S.Ct. at page 985:

"The liability here imposed does not rest on a pre-existing relationship between the plaintiff and defendant. There is consequently no need for fixed rules which would enable parties, at the time they enter into a transaction, to predict its consequences."

Obviously, intervenor's lien and right is predicated upon a contract arising from "a pre-existing relationship" between intervenor and plaintiff.

As heretofore noted, neither plaintiff nor the railroad in their briefs in this court makes any response to intervenor's contention on this point. The Fetter case is not mentioned. While their silence does not amount to a confession, it indicates that they are not able to make any persuasive response.

The order appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.