**NICKEL RIM MINES LIMITED,**
Plaintiff,

v.

**UNIVERSAL–CYCLOPS STEEL CORPORATION, Defendant.**

**HILL, BETTS, YAMAOKA, FREEHILL & LONGCOPE, Petitioners,**

v.

**UNIVERSAL–CYCLOPS STEEL CORPORATION, Defendant.**

Civ. A. No. 775–58.

United States District Court
D. New Jersey.

Feb. 9, 1962.

McGlynn, Stein & McGlynn, by Edward R. McGlynn, Newark, N. J., for petitioners.

Carpenter, Bennett & Morrissey, by Samuel M. Coombs, Jr., Newark, N. J., for defendant.

AUGELLI, District Judge.

The sole remaining question to be decided in this case is whether or not an attorney from a foreign jurisdiction who, pursuant to Rule 2(c) of the General Rules of this court, has been permitted to appear and participate in said action, may assert a lien for services under N.J.S.A. 2A:13-5.

The New Jersey statute dealing with attorneys' liens provides:

"After the filing of a complaint * * * the attorney * * *, who shall appear in the cause for the party instituting the action * * *, shall have a lien for compensation, upon his client's action, cause of action, claim * * * which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action * * * is pending, upon the petition of the attorney * * *, may determine and enforce the lien."

Rule 2(c) of the General Rules of this court, dealing with *pro hac vice* admissions, provides that:

"Any member in good standing of the bar of any court of the United States or of the highest court of any state, * * * may in the discretion of the court, on motion, be permitted to appear and participate in a particular case. Only an attorney at law of this court may receive payment on judgments. Except in criminal cases, only an attorney at law of this court may file papers, enter appearances for parties, or sign stipulations."

The New Jersey rule dealing with the same subject matter (R.R. 1:12-8) is practically the same and in its entirety reads as follows:

"Any attorney or counsellor from any other jurisdiction, of good standing there, may at the discretion of the court in which any cause is pending, be admitted, pro hac vice, to speak in such cause in the same manner as an attorney or counsellor of this State; provided, however, that all pleadings, briefs and other papers filed with the court shall be signed by an attorney of record authorized to practice in this State, who shall be held responsible for them."

Another New Jersey rule (R.R. 1: 12–5) may also be noticed here. And that reads as follows:

"(a) No fee to any attorney or counsellor shall be allowed and no allowance by way of such fee shall be made in any cause, matter or proceeding in any court in this State, except for or on account of actual service rendered by a member of the bar of this State engaged in the practice of law and maintaining an office in this State; except that in any cause, matter or proceeding requiring the services of an attorney, counsellor or other member of the bar of any foreign jurisdiction, the court, in allowing a fee or making an allowance by way of fee, as aforesaid, shall take cognizance thereof and shall make allowance therefor as though actually rendered by the member of the bar of this State by whom such services were engaged."

The right to a lien in this case is being asserted by James E. Freehill, a New York attorney, whose firm was retained by plaintiff, Nickel Rim Mines Limited, a Canadian corporation, hereinafter called "Nickel Rim," to institute legal proceedings for breach of contract against two Pennsylvania corporations, the defendant Universal-Cyclops Steel Corporation, hereinafter called "Universal", and Washington Steel Corporation, hereinafter called "Washington".

A petition and amended petition have been filed in behalf of the lien claimant and answers thereto, denying the right to such lien, have been filed by Universal. The matter is now before the court on Universal's motion for judgment on the pleadings or, in the alternative, for summary judgment.

 It is, of course, well established that a judgment will not be rendered on the pleadings unless the right thereto is clear. All well pleaded facts, and all proper inferences therefrom, that emerge from the pleadings of the party against whom the motion is made, must be taken as being admitted by the moving party. Geist v. Prudential Insurance Co. of America, 35 F.Supp. 790 (E.D.Pa.1940); John v. United States, 138 F.Supp. 89 (E.D.Wis.1956).

 And in dealing with Universal's summary judgment aspect of its motion, we observe that no such judgment may be given if there be an issue presented as to the existence of any material fact. All doubts in this regard must be resolved against the moving party. Sarnoff et al. v. Ciaglia, 165 F.2d 167 (3 Cir.1947).

The facts are not in substantial dispute. Universal was sued in this District and in connection with such suit Freehill retained New Jersey counsel. In due course Freehill, on motion, was permitted by this court to appear and participate in the cause and did, in fact, together with local counsel, engage in such activity in the litigation as took place in this District.

The other corporation, Washington, was sued in the United States District Court for the Southern District of New York, but on Washington's application, the case was transferred to the United States District Court for the Western District of Pennsylvania. A similar attempt by Universal in this court to have the case against it transferred to the same federal court in Pennsylvania failed of achievement.

The action in this District was commenced in July, 1958, and the one in New York at or about the same time. On or about October 16, 1959, the parties, without consulting or informing Freehill or his New Jersey counsel, agreed to a settlement of the litigation. Freehill learned about the settlement on or about October 20. He thereupon informed local counsel about it and put Nickel Rim on notice that he had a lien for unpaid legal services. By letter dated October 21, 1959, Freehill also advised Universal and Washington of his lien claim and asked to be advised concerning the date of settlement and whether it was intended to withhold the settlement funds until the lien claim was satisfied. In response to this let-

ter Freehill was informed that the settlement moneys had already been paid and that releases had been executed. Just when Nickel Rim received the money does not appear, but it is admitted that the exchange of releases was effected on October 29, 1959. It may be assumed, therefore, the settlement was consummated at or about that time.

Thereafter, there was some discussion between Freehill and Nickel Rim concerning the charges that would be made for legal services rendered by Freehill's firm and by local counsel retained by Freehill in the New Jersey and Pennsylvania actions. This information was given by letter dated November 10, 1959. Both New Jersey and Pennsylvania counsel have been paid by Nickel Rim. The bill submitted by Freehill remains unpaid.

■ Where, as here, an attorney from a foreign jurisdiction claims to have a right of lien under the New Jersey statute, this court will look to state law to determine whether or not such right exists. This court is not at liberty to make an independent determination of that question where applicable state law has already done so. Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940); Markakis v. The S.S. Mparmpa Christos, 267 F.2d 926 (2 Cir.1959).

■ This court's research has discovered no New Jersey case in point. Counsel for Universal argue that the New Jersey Attorneys' Lien Act must be strictly construed and not extended beyond its terms, citing McCarthy v. McCarthy, 117 N.J.Eq. 22, 174 A. 751 (E. & A.1934), and Morrell v. Smith, 122 N.J.Eq. 534, 195 A. 340 (Ch.1937). These cases do indeed state the general proposition that the statute should be strictly construed and not be extended beyond its terms. But that observation must be read in the light of the factual situation that confronted the court in those cases.

In the McCarthy case, which was a divorce action, the solicitor for the defendant husband filed a counterclaim seeking the return of certain property that had been previously conveyed to the wife. The divorce petition was dismissed and the husband was successful on his counterclaim. The solicitor, not being paid for services rendered, petitioned the court for the following relief: to have the husband enjoined from disposing of the property he recovered under the counterclaim; to have the amount of his counsel fee fixed; and to have same ordered to be a lien on said property. The court below decided the solicitor had a right to a lien under the Attorneys' Lien Act then in force. On appeal, the Court of Errors and Appeals reversed and held that the act as then written (P.L.1914, p. 410) did not include services rendered under a counterclaim in chancery. It was this omission in the statute that led the court to conclude that the act should not be extended beyond its terms. The statute was subsequently amended to extend the remedy of a lien to a solicitor filing a counterclaim in equity (L.1914, c. 201).

In the Morrell case, the complainant sought to collect a judgment he had recovered against one Elnora Smith. An attorney was made a party defendant on the ground that he had in his possession a sum of money received by him for the account of Elnora Smith in a prior action in the court of chancery. He attempted to assert an attorney's lien on the funds. The court denied his right to do so because the attorney had done none of the things that would give rise to a lien under the Statute. Here again the court observed that the act specifies the conditions under which such a lien exists and that it should not be extended beyond its terms.

We now turn our attention to the case of Clock v. Donnelly, 94 N.J.L. 124, 109 A. 362 (E. & A.1920). This case is urged upon this court in support of the proposition that a foreign attorney is not entitled to the benefits of the New Jersey Attorneys' Lien Act.

In the Clock case, two New York attorneys sued in New Jersey for legal services rendered to a New Jersey resident in the courts of New York. The trial court nonsuited the plaintiffs for failure to serve upon the defendant before suit was brought in New Jersey, a bill of particulars of plaintiffs' claim as required by section 9 of the Practice Act of 1903, as amended in 1911, which was the statutory predecessor to what is now N.J.S.A. 2A:13–6. The nonsuit was based upon the theory that a contract for services rendered in a foreign state by an attorney of that state to a client residing in this state, even though valid in the state in which it was made and performed, could not be recovered upon in the courts of this state unless service of a bill of particulars of his claim was first made upon his client.

On appeal, the judgment of nonsuit was reversed. Chief Justice Gummere, speaking for the Court of Errors and Appeals, observed that the legislature, in passing the Practice Act of 1903 (Pamph.L. p. 537), grouped together certain sections thereof dealing with "Attorneys". We shall assume that those sections were not materially different from the several sections now appearing in Chapter 13 of Title 2A of the New Jersey Statutes Annotated (N.J.S.A. 2A:13–1 to 8).

In dealing with the first 12 sections of the statute before him (which included the predecessor to N.J.S.A. 2A:13–5) the Chief Justice said that a reading of them made it very clear that by each one of them * * *

"the legislature was providing for the regulation and control of attorneys who had been admitted to the practice of law in this state, and was not intending to regulate or control the acts or rights of attorneys practicing in foreign jurisdictions, notwithstanding that the limitation is not expressly declared."

And in dealing with section 9 of the 1903 Practice Act, which was the one directly involved in the Clock case, and being the predecessor to N.J.S.A. 2A:13–6, the court said:

"We find nothing in the language used in this section which indicates that the Legislature intended that it should have a broader reach than is given to the other eleven sections with which it is grouped. In the absence of any such indication, we consider that the whole 12 sections exhibit but one *general* purpose, and that is the regulation and control of attorneys and solicitors of our own state solely.

"Considering, as we do, that the ninth section of the statute, like all of the other sections under the heading "Attorneys," refers only to solicitors or attorneys of this state, and not to solicitors or attorneys of foreign jurisdictions over whom this state ordinarily has no control, we think the rights of the parties in the present litigation were to be determined in this court upon common law principles only, so far as the maintenance of the action was concerned."

This court is not persuaded that the Clock case is controlling here. The only thing that case decided was that a lawyer from a foreign jurisdiction, who had rendered legal services in that jurisdiction to a New Jersey resident, was not obliged, in advance of starting suit in this State, to serve on the defendant a bill of particulars as required by section 9 of the Practice Act of 1903. It is clearly distinguishable from the case at bar.

With all due deference to the *obiter* views expressed in the Clock case, this court is of the opinion that the specific statutory provision here involved (N.J.S.A. 2A:13–5) must be considered in the light of the facts of the case now before the court.

Carried to its logical conclusion, the position taken by Universal would limit the benefits of the New Jersey Attorneys' Lien Act to the New Jersey attorney of record in a particular case. Indeed,

Universal in its brief, cites to the court the New York case of In re Sebring, 238 App.Div. 281, 264 N.Y.S. 379 (1933). That case involved a New York attorney, not of record, who had participated, as counsel, in certain litigation on behalf of his client, and who sought to impose a lien for his services pursuant to the New York Attorneys' Lien Act, which is not materially different from the New Jersey statute. Relief was denied on the ground that he was not the attorney of record. The court took the view that the New York statute gave a lien only to the attorney who appeared for a party; that it was not broad enough to include counsel; and that it was confined to the attorney of record.

A New Jersey case holding directly to the contrary is that of St. John, etc. v. Gengor, 124 N.J.Eq. 449, 2 A.2d 337 (Ch.1938), decided by Vice Chancellor Berry. In that case it was contended that if the solicitor of record was entitled to an attorneys' lien under the New Jersey statute, such right did not extend to another attorney who acted as counsel in the same cause. The court rejected this contention and said:

> "Petitioner makes the further point that Mr. Engelke is not entitled to a lien because he was 'of counsel' and not the solicitor of record. This contention is without merit. The remedy is extended to any 'attorney, solicitor or counsellor at law, who shall appear in the cause for the party * * *.' Mr. Engelke did, in fact, appear in the cause. The statute is not limited to an attorney or solicitor of record. Authorities cited from other jurisdictions are not applicable."

It would seem to this court that the right to a lien should not be limited to the attorney of record. If, as appears from the St. John case, the lien also extends to an attorney who acts as counsel in the cause, it should likewise extend to an attorney from a foreign jurisdiction who, in the language of the statute, "shall appear in the cause" for the party instituting the action. There is nothing in the statute to prohibit this.

In Cooper v. Hutchinson, 184 F.2d 119 (3 Cir.1950), the court had occasion to consider the standing of out-of-state lawyers who had been admitted *pro hac vice* in a New Jersey criminal case in association with local counsel. The court observed that their standing in the particular case was no different from that of any other regularly admitted local lawyer, and that the New Jersey rule itself (R.R. 1:12–8), which is similar to Rule 2(c) of the General Rules of this court under which Freehill was permitted by this court to appear *pro hac vice* in the litigation in this District, provides that a lawyer from another jurisdiction may appear "to speak in such cause in the same manner as an attorney or counsellor of this State." The court also noted that while admission *pro hac vice* is a matter of discretion with the Court, "the rights and duties of an outside lawyer, once so admitted, appear to be the same as those of a local lawyer."

In jurisdictions where the precise question here involved did arise, the courts had no difficulty in allowing a nonresident attorney to assert a lien in causes in which they appeared and participated.

In the case of Verry v. Barnes, 154 Minn. 252, 191 N.W. 589, 31 A.L.R. 707 (1923) it was sought to avoid the attorney's lien on the ground that the attorney was a non-resident attorney, not licensed to practice in Minnesota. Said the Minnesota Supreme Court:

> "We deem that fact unimportant. A nonresident attorney may try or assist in the trial or conduct of an action or proceeding pending in a court of this state. § 4947, G.S. 1913. By usage and comity, the privilege of practicing in all the courts of a state is extended to regularly licensed attorneys of sister states. 6 C.J. 573. But they have no authority to commence actions in

the courts of this state (Francis v. Knerr, 149 Minn. 122, 182 N.W. 988), and hence the prevailing practice is to associate a resident attorney of record. When this is done, as it was here, there is no reason for denying a lien for the compensation the client should pay."

The Minnesota statute dealing with Attorneys' Liens (R.L. s. 2288; 1917 c. 98; 1939 c. 394; Minn. S.A. section 481.-13) is substantially similar to N.J.S.A. 2A:13-5.

The Supreme Court of Wisconsin, in the case of Liberty v. Liberty, 226 Wis. 136, 276 N.W. 121 (1937) also had before it for decision the right of a non-resident attorney to a lien. In passing on this question, the court said:

"We see no objection to a regularly licensed attorney of a sister state, who has been duly authorized by the court in which the action is pending, taking part in the trial of a case and having the benefit of a charging lien for his services as a regularly admitted resident attorney would have, there being nothing in the law limiting the lien to the attorney of record. * * *"

█ In a proper case an attorney may enforce his lien in a court other than that before which his services were rendered. Peresipka v. Elgin, etc., 7 Cir., 231 F.2d 268, 59 A.L.R.2d 554. See also in same volume of A.L.R. the annotation, p. 564, dealing with conflict of laws as to attorneys' liens.

█ In considering the legislative intent behind the New Jersey Attorneys' Lien Act, it is obvious that it was designed to protect an attorney from being deprived of his fee in a case where, after the commencement of the litigation, he appeared in the cause for the party instituting the action.

█ The law is clear that a defendant who settles a cause of action without the knowledge or consent of the plaintiff's attorney, exposes himself to liability. Ferraro v. City Hall Garage, 94 N.J.L. 209, 109 A. 358 (E. & A.1920);

Lehigh, etc. v. Finnerty, 61 F.2d 289 (3 Cir.1932); James v. Harris, 42 N.J. Super. 468, 127 A.2d 215 (1956); Levy v. Public Service Railway, 91 N.J.L. 183, 103 A. 171 (E. & A.1918); Fuessel v. Cadillac Bar Corp., 63 N.J.Super. 430, 164 A.2d 821 (App.Div.1960).

█ In the absence of any New Jersey authority holding to the contrary, this court is of the opinion that under the facts of this case, Freehill is entitled to assert a lien under N.J.S.A. 2A:13-5 for legal services rendered in the action commenced in this District. In the language of the statute, he did, after the filing of the complaint in this cause, appear therein for the party instituting the action. Freehill's admission, pro hac vice, under the general rule of this court, specifically permitted him to appear and participate in the cause, and the proof is that he did so. Under the circumstances, this court is of the opinion that Freehill, at least so far as his right to compensation is concerned, acquired a status equal to that of a local lawyer. Many cases in this court originate with out-of-state lawyers. These lawyers retain local counsel because of the rule requirements that only attorneys of this court may receive payment on judgments, file papers, enter appearances for parties, or sign stipulations. But the actual conduct of the litigation, in most instances, is carried on by the attorney from the foreign jurisdiction after he has been admitted, pro hac vice, to appear and participate in the cause. It would be inequitable in such a situation to accord the right of lien to local counsel and deny it to his associate from another state. Neither the statute, nor the Clock decision, compels such a result.

It follows that Universal's alternative motions for judgment on the pleadings or for a summary judgment must be denied insofar as they relate to the New Jersey litigation. With respect to the legal services rendered by Freehill in the Washington litigation in New York and in Pennsylvania, the claim to a lien under the New Jersey statute for serv-

ices rendered in that lawsuit must be denied for the reason that none of the litigation involving Washington took place in this District. To the extent, therefore, that it is attempted to assert a lien for such services, Freehill's application must be denied and Universal's motion for summary judgment on this aspect of the case will be granted.

On the practice to be followed counsel are referred to Artale v. Columbia, etc., 109 N.J.L. 463, 162 A. 585 (E. & A.1932) and H. & H. Ranch Homes, Inc. v. Smith, 54 N.J.Super. 347, 148 A.2d 837 (App.Div.1959).

An order may be submitted in conformity with the views herein expressed.