[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2012
JOHN LEY
CLERK

No. 10-12651

D. C. Docket No. 1:08-cv-22174-JLK

LYDIA ROSENFELD,

Plaintiff-Appellant,

versus

OCEANIA CRUISES, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**ORDER ON REHEARING EN BANC**

Before DUBINA, Chief Judge, TJOFLAT, EDMONDSON, CARNES,
BARKETT, HULL, MARCUS, WILSON, PRYOR and MARTIN, Circuit
Judges.*

_____

*Judge Adalberto Jordan did not participate in the en banc poll.

BY THE COURT:

The court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure), the Suggestion of Rehearing En Banc is **DENIED.**

                                          /s/ Joel F. Dubina
                                          Chief Judge

TJOFLAT, Circuit Judge, dissenting from the Denial of Rehearing En Banc:

This is a personal injury case governed by maritime law. Lydia Rosenfeld slipped and fell in the dining room of an ocean liner, M/V Nautica, during a voyage from Athens to Istanbul. The floor on which she slipped was composed of ceramic tile. Rosenfeld claimed that she slipped because the floor was wet and that vessel owner Oceania Cruises, Inc.'s negligence was responsible for her fall and consequent injuries. Oceania claimed that the floor was dry, that Rosenfeld fell because she was running in high heels, and that it was not liable for her injuries.

At trial, Rosenfeld proffered the deposition testimony of an expert witness, who had examined the floor where the accident happened and opined that it could be unreasonably slippery when wet, but not when dry. Presumably, Oceania objected to the introduction of the testimony; the District Court sustained the objection and barred the testimony. Because a transcript of the trial proceedings is not part of the record on appeal, we do not know the basis of Oceania's objection or the District Court's reason for excluding the testimony.

The jury found for Oceania, and Rosenfeld moved the District Court for a new trial based on the District Court's provisional pretrial—not its trial—ruling

excluding the expert's testimony. The District Court, unpersuaded that its <u>pretrial</u> ruling was incorrect, denied Rosenfeld's motion for a new trial.

In her opening brief to this court, Rosenfeld did the same thing. She argued that she was entitled to a new trial because the District Court's provisional <u>pretrial</u> ruling erroneously precluded the jury from receiving the expert's testimony. She could not argue that the District Court's <u>trial</u> ruling constituted reversible error because she had instructed the court reporter not to transcribe the trial proceedings. In short, her decision not to include a trial transcript as part of the record on appeal precluded this court from determining two things: (1) whether the District Court abused its discretion in excluding the proffered testimony at <u>trial</u>, and (2) whether, after reflecting on the evidence presented to the jury, the District Court should have granted her a new trial on the ground that its adverse <u>pretrial</u> evidentiary ruling affected her substantial rights.

The panel assigned to hear Rosenfeld's appeal overlooked the fact that Rosenfeld's argument for reversal was based on a provisional <u>pretrial</u> ruling and treated the argument as if it were addressed to the District Court's <u>trial</u> ruling. The panel then concluded that the District Court erred in excluding the proffered evidence, that the error was not harmless, and that the District Court should have granted Rosenfeld a new trial. In overlooking what Rosenfeld had done, the panel

failed to recognize that Rosenfeld, in basing her new trial motion on a provisional pretrial evidentiary ruling rather than an evidentiary ruling at trial, had effectively waived her argument that the District Court abused its discretion in not granting a new trial. Had the panel recognized this fact, it would have rejected Rosenfeld's appeal out of hand.

Instead, the panel held that the District Court's ruling constituted an abuse of discretion because it prevented the jury from considering a critical piece of evidence—the expert's opinion that the floor could cause someone, like Rosenfeld, to slip and fall if the floor was wet. The abuse of discretion was so prejudicial, in the panel's view, that the District Court should have granted Rosenfeld's motion for a new trial.

Because Rosenfeld chose not to include a transcript of the trial proceedings in the record on appeal, the parties' briefs contain the only "evidence" the panel had to draw on to determine whether the expert's testimony would have assisted the jury in deciding the case and whether the exclusion of the testimony prejudiced Rosenfeld to the extent that it affected her substantial rights, thus requiring a retrial. The briefs contain the lawyers' recollections of what the jury heard from the witnesses. Rosenfeld's opening brief states that "while she was on her way to the bathroom, [Rosenfeld] walked on the ceramic tile and slipped and fell on a

5

slippery wet substance" and that "immediately after the slip and fall, she looked around and it was wet." Appellant's Br. at 2. Oceania's answer brief states that "[t]he floor was dry" and that Rosenfeld fell because she was "almost running in high-heeled shoes." Appellee's Br. at 5, 9. To decide the appeal in favor of Rosenfeld solely on a reading of the parties' briefs, the panel had to accept Rosenfeld's lawyer's representation of the evidence presented to the jury regarding the condition of the floor—that it was wet enough to cause Rosenfeld to slip and fall—and that the jury, if presented with the expert's opinion that the floor would be unreasonably dangerous if "saturated" with water, id. at 7, could have returned a verdict for Rosenfeld.

I dissent from this court's failure to take the case en banc for three reasons. First, a court of appeals cannot set aside a jury verdict and grant a new trial based on an error that was never raised. Rosenfeld challenges a pretrial evidentiary ruling that was provisional. Not only was it provisional as a matter of law; Rosenfeld knew that it was provisional and treated it as such, which is why she proffered the expert's testimony at trial.

Second, assuming that Rosenfeld's opening and reply briefs accurately portrayed the evidence before the jury and the District Court's reason for rejecting Rosenfeld's trial proffer of the expert's testimony, I find that the panel altogether

misapplied Federal Rule of Evidence 702 in ruling the proffer admissible. If left undisturbed, I fear that the panel's holding will cause trial judges either to admit expert opinion testimony that ought to be excluded or to suffer reversal if it is excluded.

Third, binding precedent and statutory law mandate that a court of appeals cannot determine whether a trial judge abused his discretion in denying an appellant's motion for a new trial without a transcript of the testimony presented to the jury and the exhibits introduced into evidence. This is so because no error is reversible unless it is so prejudicial as to affect the appellant's substantial rights. It is the appellant's burden to demonstrate such prejudice, a burden that cannot be satisfied without a record of what the jury heard. The panel relieved Rosenfeld of this burden and ordered a new trial solely on her lawyer's representations that the District Court had misapplied Rule 702.

This opinion is organized as follows: Part I sets out the case as the panel accepted it. I start with the pretrial proceedings—principally the District Court's denial of Oceania's motion for summary judgment and the court's provisional ruling that the expert's opinion was inadmissible—and then present Rosenfeld's slip and fall as portrayed in Rosenfeld opening brief (otherwise, the expert's opinion would be plainly inadmissible). Part I ends by explaining why the panel

had no cause to review the District Court's decision because Rosenfeld's appeal was effectively an appeal from a nonreviewable pretrial ruling. Part II discusses the District Court's ruling excluding the expert's opinion testimony. Part III reviews the precedent holding that an appellant cannot obtain the reversal of the denial of a motion for a new trial without showing prejudicial error—something she cannot do without a transcript of the proceedings before the jury. Part IV explains why the panel has subverted this requirement, even though that the panel has done so may not be immediately obvious to someone reading the panel's opinion. Part V states why I have written this dissenting opinion.

## I.

To understand the stage that was set for the panel, it is necessary to understand how this case arose. To do so—for reasons I explain in part II.A, infra—one must look to the parties' briefs on appeal. In relevant part, here is what they say.

## A.

Rosenfeld fell in one of M/V Nautica's buffet-style restaurants, the Terrace. The area where Rosenfeld slipped, which had a ceramic tile floor, was an area where patrons entering and exiting the Terrace would likely traverse. That area was alongside a service bar where wait staff—and occasionally customers—would

fill glasses with water, juice, etc. for patrons.  Rosenfeld said that she slipped and fell while exiting the dining area to use the restroom, walking at a normal gait and in small-heeled shoes, on tile she described as wet.  Rosenfeld's husband also noted that the floor was wet when he came to his wife's aid.  A Terrace waitress, on the other hand, observed that the floor was dry when she inspected it immediately after the fall.  Although the waitress did not witness Rosenfeld actually slip and fall, she said that Rosenfeld appeared to be running in high heels before she fell.

Rosenfeld's arguments sounded in a variety of negligence theories, but all built on three propositions: (1) the Terrace floor was in fact wet; (2) Oceania had either actual notice that the floor was wet, because Terrace staff had made it so, or constructive notice, because someone else made it wet and Oceania should have noticed the condition before Rosenfeld fell; and (3) Oceania had notice that the floor was dangerous when wet.  As to this third point, Rosenfeld arranged to have the friction and slip-resistance of the Terrace's flooring tested.  Rosenfeld hired Peter Vournechis, an Australian slip-resistance specialist, to analyze the floor.[1]

---

[1] The M/V Nautica was docked in Australia around the time this suit was filed.

In his deposition testimony, part of which Rosenfeld would proffer at trial,[2] Vournechis explained that he performed standardized and internationally accepted friction testing on the floor in both a "saturated" condition and a "dry" condition. He then applied the resulting friction-coefficient values to the minimum Australian standards for slip-resistance in food-service applications and concluded that the floor was below the minimum requirements when "saturated" with potable water.[3] Yet when dry, the floor would not contribute to slips.

Vournechis tested the floor without knowing what was on the floor, i.e., the type of liquid and its quantity—when Rosenfled slipped. Nor did he know what may have contributed to her fall, such as gait and footwear. Nor could Vournechis testify that his test replicated the amount or type of liquid on the floor, if any, when Rosenfeld slipped. Nor did Vournechis offer an alternative flooring choice that would have been safer than the Terrace's ceramic tile. In effect, all Vournechis could establish was that the floor was slippery when wet.

After denying Oceania's motion for summary judgment, the District Court held a pretrial conference, during which it <u>sua sponte</u> raised the issue of whether to

---

[2] Vournechis was unavailable to testify at trial.

[3] The Australian slip-resistance standards for food-service areas are less stringent than the comparable American standards.

10

admit into evidence at trial Vournechis's deposition testimony.[4]  Rosenfeld argued that a jury could not find for her unless Vournechis were allowed to testify that the floor's tile had an unacceptably low friction coefficient when wet, as compared to minimum friction requirements in food-service areas, and was thus unreasonably dangerous.  In opposition, Oceania contended that Vournechis's testimony was unreliable because it did not fit the facts of this case.[5]  Vournechis, Oceania argued, did not know whether or to what extent the floor was wet, yet he testified that the floor was unreasonably dangerous based on standards that applied to wet floors in food-service areas.  Oceania argued, therefore, that Vournechis's testimony was either unhelpful as applied to the facts, irrelevant, or both.

After hearing from counsel, the District Court ruled Vournechis's deposition testimony inadmissible.  Its ruling was, of course, provisional; the court

---

[4]  In arguing the admissibility of Vournechis's testimony, Rosenfeld acknowledged that the District Court had correctly identified the central issue in this case: whether the floor was wet.  Thus, if the jury were to find that the floor was not wet, Vournechis's testimony would be irrelevant.  Even if the floor were wet, Vournechis's testimony would be unnecessary if Oceania had no notice that the floor was wet.

[5]  Oceania's challenge was based on Federal Rule of Evidence 702, as construed in  United States v. Frazier, 387 F.3d 1244 (11th Cir. 2004) (en banc).  Oceania did not request a Daubert hearing to validate Vournechis's qualifications or his testing methodology.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

11

was ruling in a vacuum, without the benefit of the evidence that would ultimately be introduced at trial. Rosenfeld could proffer the testimony at trial once she introduced the evidence Vournechis presumably used as a predicate for his opinion. Thus, at trial, at the close of her case, Rosenfeld did proffer his testimony—specifically, excerpts she extracted from his deposition. The District Court—presumably upon Oceania's objection—excluded the excerpts and marked them for the record as Court's Exhibit # 1.

After the jury returned a verdict for Oceania, Rosenfeld moved the District Court for a new trial based on the provisional <u>pretrial</u> exclusion of Vournechis's testimony, arguing that she could not show a negligent choice of flooring surface without expert testimony saying just that. Rosenfeld presented the court with citations to pretrial deposition testimony that was not presented to the jury, namely statements Rosenfeld and her husband and Jelena Kovacevic, the Terrace restaurant waitress, made when deposed. She also cited statements made by Robin Lindsay, an Oceania executive, whose deposition was read to the jury in Rosenfeld's case in chief (according to the courtroom deputy's witness list). Rosenfeld then reiterated the argument she had made at the pretrial conference when the court was considering the admissibility of Vournechis's testimony. As part of her argument she cited the District Court's pretrial order striking her "slip

12

and fall" expert.  See Rosenfeld v. Oceania Cruises, Inc., No. 08-22174-CIV-

KING (S. D. Fla. Sept. 10, 2009) (Order Granting Motion to Preclude Expert

Testimony & Denying Motion to Strike).

The District Court denied Rosenfeld's motion for new trial.  The District

Court's  order plainly indicates that it treated Rosenfeld as seeking a new trial on

the basis of its provisional pretrial ruling.  The order states:

> Plaintiff moves the Court for a new trial based on the Court's Order
> striking Plaintiff's "Slip and Fall" Expert (DE #53) entered on
> September 10, 2009.  Plaintiff's main contention is that without the
> testimony of her expert Peter Vournecish [sic], Plaintiff was severely
> prejudiced.  The Court is not persuaded by Plaintiff's arguments.
> Accordingly, after a careful review of the record and the court being
> otherwise fully advised . . . Plaintiff's Motion For New Trial . . . is
> hereby, [denied].

Rosenfeld v. Oceania Cruises, Inc., No. 08-22174-CIV-KING, slip op. at 1 (S.D.

Fla. May 7, 2010) (Order Denying Motion for New Trial) (emphasis added).

Rosenfeld then appealed to this court.[6]

---

[6]  We review a District Court's ruling on a motion for new trial for abuse of
discretion.  Lanham v. Whitfield, 805 F.2d 970, 972 (11th Cir. 1986). "The critical difference
between abuse of discretion review and de novo review is that abuse of discretion
'recognizes [a] range of possible conclusions the trial judge may reach.'" Thompson
v. RelationServe Media, Inc., 610 F.3d 628, 668 (11th Cir. 2010) (Tjoflat, J.,
concurring in the appeal and dissenting in the cross-appeal) (alteration in original)
(quoting United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc)).
More specifically,

> [b]y definition . . . under the abuse of discretion standard of review there

13

B.

It is clear that Rosenfeld expected the District Court to grant her a new trial on the basis of an erroneous provisional <u>pretrial</u> evidentiary ruling. The ruling was <u>in limine</u>. According to Black's Law Dictionary, an <u>in limine</u> ruling is one that comes "[o]n or at the threshold; at the very beginning; preliminarily." <u>Black's Law Dictionary</u> 708 (5th ed. 1979). <u>In limine</u> rulings to admit or exclude evidence are always preliminary and conditioned on what the evidence shows at trial. <u>See, e.g.</u>, <u>Ohler v. United States</u>, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 1854 n.3, 146 L. Ed. 2d 826 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."); <u>Luce v. United States</u>, 469 U.S. 38, 41–42, 105 S. Ct. 460, 463, 83 L. Ed. 2d 443 (1984) ("The [in limine] ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the

---

will be occasions in which we affirm the district court even though we would have gone the other way had it been our call. That is how an abuse of discretion standard differs from a <u>de novo</u> standard of review. As we have stated previously, the abuse of discretion standard allows "a range of choice for the district court, so long as that choice does not constitute a clear error of judgment."

<u>Id.</u> at 668–69 (alterations in original) (quoting <u>Frazier</u>, 387 at 1259 (quoting <u>Rasbury v. I.R.S.</u>, 24 F.3d 159, 168 (11th Cir. 1994))) (internal quotation marks omitted).

14

exercise of sound judicial discretion, to alter a previous <u>in limine</u> ruling."). Thus, an <u>in limine</u> ruling is, for all intents and purposes, superseded by the trial judge's final ruling on the evidence <u>at trial</u>.

What this precedent tells us is that District Court's <u>pretrial</u> ruling declaring Vournechis's deposition testimony inadmissible had no legal effect. The court could revisit the ruling at trial, after Rosenfeld introduced evidence the expert's opinion addressed. If Rosenfeld wanted the jury to have the benefit of his testimony, she had to offer it into evidence. And that is what she did. Her problem is that she did not seek a new trial on the basis of the courts <u>at-trial</u> ruling on the proffer; rather, she based her motion on the court's <u>pretrial</u> ruling. It is a matter of common sense that a District Court cannot be held to have issued an evidentiary ruling that denied the appellant a fair trial when the ruling was merely provisional, preliminary, or temporary.

The result of all of this is that Rosenfeld has waived any argument she may have had that the District Court abused its discretion when, <u>at trial</u>, it denied her proffer. Rosenfeld's appeal is thus a run-of-the-mine case of an abandoned issue, with no argument whatsoever for why the District Court's final evidentiary ruling at trial should now be reviewed. This court "will not address a claim that has been abandoned on appeal or one that is being raised for the first time on appeal,

15

without any special conditions." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1335 (11th Cir. 2004). The panel, in failing to recognize this situation, committed error when it purported to review the "merits" of Rosenfeld's appeal—i.e., when it reviewed Rosenfeld's appeal from an in limine ruling as if she had appealed the District Court's trial ruling.

For the sake of argument, however, I will address this appeal as the panel apparently has. I will assume that Rosenfeld did not waive or abandon the argument that the District Court abused its discretion when, at trial, it denied her proffer, and that the final denial prejudiced her case thus affecting her substantial rights and requiring a retrial. What I will demonstrate is that the panel nevertheless erred when, in seeing the case for what Rosenfeld said it was, the panel reversed the District Court and ordered a new trial. I shall elaborate in the next part.

## II.

Rosenfeld contended on appeal that she was entitled to a new trial because (1) the District Court abused its discretion by excluding her expert witness and (2) the erroneous ruling severely prejudiced her case. Each argument, of course, ultimately concerns the District Court's application of Federal Rule of Evidence 702, which governs the admissibility of expert testimony. If this case is as the

16

panel says it is, then the panel's opinion, on its face, erroneously applies the evidentiary rule at the heart of this case.

Therefore, I will now assess whether the District Court's evidentiary ruling was in error. If we are to assume, as the panel apparently has, that the sans-transcript record before us is sufficient to review the evidentiary ruling, then the District Court reasonably applied Rule 702 in excluding the expert. In other words, if the reader were to assume that the record before the panel contained sufficient evidence from which prejudicial trial error could be determined, that record did not reflect that Rosenfeld's expert's testimony was admissible in the first place. At most, all the expert's testimony could possibly establish is that a tile floor could be slippery when wet. Considering that this fact is well within the experience of the average juror, the District Court acted well within its discretion to exclude such testimony. Although the members of the panel might have reached a different conclusion, we have no valid ground to say the District Court abused its discretion.

## A.

The record on appeal as it relates to the trial, which began on March 15 and ended on March 17, 2010, contains only a portion of what transpired at trial. It includes the courtroom deputy clerk's minute entries for each day of the trial; the

17

courtroom deputy clerk's "Exhibit and Witness List"; Court's Exhibit # 1, the proffer of Vournechis's testimony, as indicated on the list; and the District Court's charge to the jury. The record also includes a note from the jurors indicating that they were at one point deadlocked as well as the jury's ultimate verdict. The post-trial record contains "Plaintiff's Motion for New Trial" and the District Court's "Order Denying Motion For New Trial." As I have already stated, the record does not include a transcript of the Vournechis proffer, the court-counsel colloquy, or the court's oral ruling; or a transcript of the testimony before the jury.

The Exhibit and Witness List indicates that Rosenfeld called all of her witnesses on the first day of the trial. She presented the testimony of four witnesses: herself; her husband; Dr. Jorge Cabrera, a physician; and Robin Lindsay, an Oceania official (via his deposition). She also introduced into evidence an "Incident Report," a "Corporate Statement," and a "Diary."

The second day of the trial began with marking the Vournechis proffer as Court's Exhibit # 1 for identification. Oceania then presented its case on the second day, calling four witnesses to the stand; Dr. Theodore Evans, a physician; Robin Lindsay; Jelena Kovacevic; and Dr. Sami Yuksel, the ship's physician. On the third day of trial, the jury found for Oceania.

We can assume from the District Court's pretrial ruling and from the fact that Vournechis's testimony was not admitted that the District Court did not alter its ruling based on the evidence at trial. One assumption might be that the District Court denied the proffer for the same reason it excluded the deposition pretrial. But we simply do not know this to be true based on the record on appeal. We do not know what actually happened at trial or what the evidence showed.

B.

Rule 702, **Testimony by Experts**, states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge <u>will help the trier of fact</u> to understand the evidence or <u>to determine a fact in issue</u>;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods <u>to the facts of the case</u>.

Fed. R. Evid. 702 (emphasis added).[7]

---

[7] The panel's opinion does not apply this rule directly. Rather, it applies our iteration of the rule as expressed in <u>United States v. Frazier</u>, 387 F.3d 1244 (11th Cir. 2004) (en banc). <u>Rosenfeld</u>, 654 F.3d at 1193 (quoting <u>Frazier</u>, 387 F.3d at 1260). That iteration is as follows:

Trial courts must consider whether:
> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently <u>reliable</u> as determined by the

Thus, the decision whether to admit or exclude expert testimony is based on

several preliminary factual inquiries. For example, we have said that "when

'[f]aced with a proffer of expert scientific testimony . . . the trial judge must

determine at the outset'" such preliminary facts as "'whether the expert is

proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact

to understand or determine a fact in issue.'" United States v. Paul, 175 F.3d 906,

910 (11th Cir. 1999) (alteration in original) (quoting Daubert v. Merrell Dow

Pharm., Inc., 509 U.S. 579, 592, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993)).

---

sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (emphasis added) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469 (1993))).

Although the Rule 702 and Frazier tests are differently worded, they must be read in harmony. First, both contain the overarching requirement that the testimony "assist[ ] the trier of fact" in "understand[ing] the evidence" or in "determin[ing] a fact in issue." Also, even though the Frazier test does not explicitly include Rule 702's requirement that "the expert has reliably applied the principles and methods to the facts of the case," that clause nevertheless resides within the Frazier inquiry. Regarding Frazier's second prong, an expert's conclusions are not "sufficiently reliable" if the expert has not applied his method to "the facts of the case." And regarding Frazier's third prong, testimony will not "assist[ ] the trier of fact" if the expert has not applied his method "to the facts of the case."

20

The factual findings the judge must make thus concern identifying scientific knowledge and the facts at issue.[8]

The District Court's decision admitting or excluding evidence is a discretionary call; a judge commits no reversible error unless his decision constituted an abuse of discretion. Piamba Cortes v. Am. Airlines, Inc., 177 F.3d 1272, 1305–06 (11th Cir. 1999). The Supreme Court has explicitly stated that these determinations are subject to abuse-of-discretion review, which cannot be overturned unless they are "manifestly erroneous." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141–43, 118 S. Ct. 512, 517, 139 L. Ed. 2d 508 (1997) (internal quotation marks omitted).[9] "A district court abuses its discretion if it applies an

_____

[8] These findings are akin to factual findings supporting conditional relevance under Federal Rule of Evidence 104. That Rule provides, in relevant part, that "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible" and that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(a)–(b); see also, e.g., Isley v. Capuchin Province, 877 F. Supp. 1055, 1066 (E.D. Mich. 1995) ("[U]nder Daubert, the Court perceives its role with respect to the admissibility of expert testimony as being a 'screener' of expert testimony, similar to its role under Fed. R. Evid. 104(b) of screening conditionally relevant evidence.").

[9] "This court reviews a district court's evidentiary rulings for abuse of discretion. The factual findings underlying those rulings are reviewed for clear error." United States v. Lebowitz, 676 F.3d 1000, 1009 (11th Cir. 2012) (per curiam) (citing United States v. Lanzon, 639 F.3d 1293, 1300 (11th Cir. 2011)). At first blush, it may seem appropriate to review preliminary findings of fact—made to enable the District Court to rule on the admissibility of an expert's testimony—for

incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1251 (11th Cir. 2004) (quoting <u>Klay v. United Healthgroup, Inc.</u>, 376 F.3d 1092, 1096 (11th Cir. 2004)) (internal quotation marks omitted). Whether the District Court could be said to have abused its discretion in excluding the testimony depends on whether the court (1) misapplied the law or (2) based its decision on a clearly erroneous finding of fact. In the expert-admission context, for example, a District Court could abuse its discretion

---

clear error. <u>See, e.g.</u>, <u>Morales v. Am. Honda Motor Co.</u>, 151 F.3d 500, 514 (6th Cir. 1998) ("<u>Cook v. American S.S. Co.</u>, 53 F.3d 733, 738 (6th Cir. 1995), . . . . requires that (1) the trial court's preliminary fact-finding under Rule 104(a) be reviewed for clear error; . . . and ([2]) the trial court's determination whether the proposed expert opinion 'will assist the trier of fact to understand the evidence or to determine a fact in issue' be reviewed for an abuse of discretion." (quoting Fed. R. Evid. 702)). In <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997), however, the Supreme Court held that abuse of discretion is the proper standard of review for a district court's decision to admit or exclude expert testimony. <u>Id.</u> at 141–43, 118 S. Ct. at 517.

     The two standards may be reconciled in this scenario because the abuse-of-discretion standard espoused by this court includes review of factfinding for clear error. <u>See</u> <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1251 (11th Cir. 2004). In short, a district court abuses its discretion if it clearly errs in making a finding of fact—including findings concerning the factual predicate for expert testimony. <u>See id.</u> Thus, a district court abuses its discretion if it excludes an expert based on a clearly erroneous appraisal of the facts necessary to make a Rule 702 determination, such as what is the fact at issue to which the expert's testimony is purportedly relevant. Such a misapprehension is an abuse of discretion because, in the words of <u>Joiner</u>, it is "manifestly erroneous." 522 U.S. at 142, 118 S. Ct. at 517 (internal quotation marks omitted).

22

if it misperceived the nature of the expert's testimony or the facts to which the testimony purportedly relates.

C.

The lack of a trial transcript precludes us from knowing what the District Court said at trial in rejecting Rosenfeld's proffer of Vournechis's deposition testimony. This fact alone ought to have precluded appellate review of the District Court's evidentiary ruling. "It is important, if not essential, to the reviewing court that an appellant under Rule 10, Fed. R. App. P., bring before this court all parts of the proceedings below necessary for a determination of the validity of any claimed error." Ries v. Lynskey, 452 F.2d 172, 178 (7th Cir. 1971); see also Schmid v. United Bhd. of Carpenters & Joiners, 827 F.2d 384, 386 (8th Cir. 1987) (per curiam) ("Although the record on appeal contains a copy of the special verdict form and jury instructions given, Schmid did not order a transcript of the trial proceedings as required by Fed. R. App. P. 10(b). In the absence of a transcript, this court cannot rule on the first three issues Schmid raises."); Tex. & Pac. Ry. v. Buckles, 232 F.2d 257, 261 (5th Cir. 1956) ("The hospital record offered in evidence is not brought forward in the transcript of record on appeal, nor as an exhibit, and consequently we are not in position to say that the court erred in

23

excluding the record . . . .").[10] An objection to an evidentiary ruling is not properly preserved for appeal if the record on appeal does not include a transcript of the relevant colloquy and testimony. See, e.g., Carter v. Jacobsen, 748 F.2d 487, 488 (8th Cir. 1984) (per curiam); Brattrud v. Town of Exline, 628 F.2d 1098, 1099 (8th Cir. 1980) (per curiam). Thus, the panel could not have reviewed the District Court's exclusion of Vournechis's testimony at trial because there was an insufficient record to review for abuse of discretion. In short, we do not know upon what facts and arguments the District Court exercised its discretion.

D.

The panel could only assume that the District Court rejected the proffer for the reasons it stated in its pretrial order excluding Vournechis's testimony. Such an assumption—which the panel obviously made in rendering its opinion—does not indicate that the District Court would have abused its discretion in excluding Vournechis's testimony. Moreover, although the District Court's evidentiary ruling was in limine, preliminary, and conditioned on the evidence that would be presented at trial, see, e.g., Ohler v. United States, 529 U.S. 753, 758 n.3, 120 S.

---

[10] Texas & Pacific Railway v. Buckles constitutes Eleventh Circuit precedent because it was handed down prior to October 1, 1981. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Like Buckles, all of the Fifth Circuit cases I cite in this opinion were decided before that date and thus are Eleventh Circuit precedent.

Ct. 1851, 1854 n.3, 146 L. Ed. 2d 826 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."), there is no evidence in the record that would indicate the extent to which—if at all—the District Court altered that preliminary ruling. Without a transcript of what the jury heard, there is no basis here to believe that some evidence adduced at trial affected the District Court's preliminary evidentiary ruling—in effect, changing the exclusion of Vournechis's testimony from inadmissible to admissible. In this light, there is no need to assume that the District Court's exclusion of Vournechis's testimony at trial differed from its pretrial exclusion. Extrapolating from what we do know about the District Court's evidentiary ruling—and without cause to assume otherwise—my analysis shows that Vournechis's testimony was unnecessary, improper, and appropriately excluded.

In the pretrial order, the District Court stated that Rosenfeld wanted to introduce the testimony to "show that the floor, when wet, [was] unreasonably dangerous." Rosenfeld v. Oceania Cruises, Inc., No. 08-22174-CIV-KING, slip op. at 2 (September 10, 2009) (Order Granting Motion to Preclude Expert Testimony & Denying Motion to Strike). The court found that the testimony

25

would not be "helpful," that the expert's opinion that the floor was unsafe when wet was a finding "properly left for the . . . jury to decide." Id. at 3.[11]

The District Court excluded the proffered deposition testimony of Peter Vournechis because it would not assist the jury in determining a fact in issue.[12] According to her pretrial deposition testimony (which the jury did not hear),[13] Rosenfeld was walking across the floor at a normal speed and gait in heels only an inch or so high, and slipped—because, unbeknownst to her, the floor was wet. Mr. Rosenfeld, on coming to his wife's aid, also claimed on deposition that the floor was wet. At trial, both Rosenfelds testified; one might assume, based on the record before the panel, that they both stuck to their claim that the floor was wet.

Upon close inspection, the true fact in issue in this case was whether a floor was wet. Oceania did not dispute that Mrs. Rosenfeld fell and was injured. So the fall and consequent injury were not at issue. Rather, what was disputed was the

---

[11] If the court had put its finding in the language of Rule 702, it would have said that the expert's opinion that the floor was unsafe when wet would not "help the trier of fact . . . to determine a fact in issue." Fed. R. Evid. 702(a).

[12] In light of the foregoing discussion, the only recorded basis for excluding Rosenfeld's expert appears in the District Court's pretrial ruling. If the colloquy at trial following Rosenfeld's proffer indicated a different basis, we shall never know because Rosenfeld did not have that colloquy transcribed.

[13] The only deposition read to the jury was that of Robin Lindsay, the Oceania executive.

26

wetness of the floor. The two Oceania witnesses who observed the floor said, on deposition, that it was not. The first was Jelena Kovacevic, a waitress on duty in the Terrace Café at the time of the accident. She observed Mrs. Rosenfeld get up from her table and head for a Café exit past the buffet bar: "[Rosenfeld's] shoes were very high heels . . . . She had a tight dress," and Rosenfeld "was walking, almost running, very fast, like she . . . wants to go to the toilet or go pick up something and come back real fast." Record, Vol. 1, doc. 27, at 77. Kovacevic did not see Mrs. Rosenfeld fall. She became aware of the fall momentarily and rushed to where Mrs. Rosenfeld lay. She observed the floor around her; it was dry. Dr. Sami Yuksel, the ship's doctor, was summoned to the scene. He saw no water on the floor.

So, the issue of fact the jury had to decide was which witnesses were telling the truth—was the floor wet or dry? If the jurors believed the Rosenfelds, Mrs. Rosenfeld was walking at a normal gait and, unaware that the floor was wet, slipped and fell. If the jurors disbelieved Mrs. Rosenfeld, they would find against her.

The jury did not need Vournechis's testimony in order to determine whether or not Mrs. Rosenfeld fell. That was not in dispute. What the jury had to decide—in terms of the cause of the fall—was whether Mrs. Rosenfeld fell

because she slipped on a wet floor or for some other reason, such as the reason Kovacevic's testimony suggested—she was walking, almost running, very fast, in very high heels. All that Vournechis's testimony would have established is that water or wetness on the tile floor would present to someone unaware of the water or wetness an unreasonable risk of slipping.

This was a common-sense observation, something a typical juror would have known as a matter of everyday life experience. "The test for determining the appropriateness of expert testimony is 'the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" Pelster v. Ray, 987 F.2d 514, 526 (8th Cir. 1993) (quoting Fed. R. Evid. 702 advisory committee's note). Thus, matters of common sense typically do not require or allow for expert testimony. See, e.g., id.; see also Evans v. Mathis Funeral Home, Inc., 996 F.2d 266, 268 (11th Cir. 1993) (explaining that the District Court did not abuse its discretion by excluding expert testimony that uneven and poorly lit steps could have contributed to the plaintiff's fall because the potential effect of those factors was "within the common knowledge of the jurors"); Ellis v. Miller Oil Purchasing Co., 738 F.2d 269, 270 (8th Cir. 1984) (per curiam) ("Where the

28

subject matter is within the knowledge or experience of lay people, expert testimony is superfluous."). For instance, the <u>Pelster</u> court held that expert testimony was inadmissible to establish that car odometers had been rolled back because "any lay person has the ability to compare the odometer readings on two titles, odometer statements, or check-in sheets and decide whether and when the vehicle's odometer had been rolled back." <u>Pelster</u>, 987 F.2d at 526. To say that this analysis lies within common sense is simply another way to say that expert testimony on the subject will not assist the trier of fact to understand anything more than he already does.

The same is true in the present case: It is common sense that if a tile floor is wet and one is unaware of the wetness, one might slip—depending on soles of one's shoes and the gait. Ordinary experience tells us, for example, that if a tile floor is wet and a sign, "Wet Floor," has been posted, or the wetness is apparent, and one still wants to traverse the floor, one tiptoes across the floor. Expert testimony would not help the jurors understand this concept because every juror already knows it.

Consequently, the District Court found that Vournechis's testimony would not assist the jury in determining a fact in issue. Oceania did not take issue with the proposition that, if the floor was wet, Mrs. Rosenfeld could have slipped. The

only fact in issue was thus whether the floor was wet. Vournechis's testimony couldn't have assisted the jury resolving the wetness issue. The District Court's finding to that effect was therefore not "manifestly erroneous." Joiner, 522 U.S. at 142, 118 S. Ct. at 517 (internal quotation marks omitted). And in turn, because the finding of fact on which the court made its ruling was not clearly erroneous, and because the court correctly identified the central issue of fact—was the floor wet?—the District Court did not abuse its discretion. Thus, assuming the District Court's basis for its evidentiary ruling at trial mirrored its basis for its pretrial ruling, the District Court did not err.

## III.

This case does not end with an analysis of whether the District Court erred. The panel still had to determine whether that error was so grave as to warrant a new trial. Consequently, I begin that discussion with a review of what a court of appeals should do when an appellant claims that an adverse evidentiary ruling constituted an abuse of discretion and affected her substantial rights such that she should be afforded a new trial. As I will explain, the panel could not have conducted the appropriate review in this case without a trial transcript in the record on appeal. Because the panel nevertheless proceeded to grant Rosenfeld a new trial, it erred even further.

30

A.

When, on appeal, an appellant seeks a new trial based on an adverse evidentiary ruling, the court of appeals decides whether a new trial should be ordered according to the dictates of 28 U.S.C. § 2111, **Harmless error**: "On the hearing of any appeal . . . in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." This standard is substantially similar to harmless-error review in the District Courts under Federal Rule of Civil Procedure 61, **Harmless Error**:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61.[14] Thus, errors that do not "'affect the substantial rights of the parties' are not sufficient to set aside a jury verdict in an appellate court." Palmer v. Hoffman, 318 U.S. 109, 116, 63 S. Ct. 477, 482, 87 L. Ed. 645 (1943) (quoting 28 U.S.C. § 391 (current version at 28 U.S.C. § 2111)). If "the error did not influence the jury, or had but very slight effect," then the error did not affect the substantial rights of the parties and the verdict should stand. Kotteakos v. United States, 328 U.S. 750, 764, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557 (1946) (emphasis added).

These requirements establish a critical distinction between error—which does not necessarily require reversal—and prejudicial error—which does justify a new trial. Establishing that the District Court committed error—in this case an abuse of discretion in excluding the expert's deposition testimony—is, therefore, only the first inquiry. See, e.g., Head v. Halliburton Oilwell Cementing Co., 370 F.2d 545, 546 (5th Cir. 1966) ("[T]he letter obviously should not have been

_____

[14] Although the Federal Rules of Civil Procedure apply only to the District Courts in a strict sense, see Fed. R. Civ. P. 1, the courts of appeals must act according to the "salutary policy embodied in Rule 61" that Congress reinforced through 28 U.S.C. § 2111, McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554, 104 S. Ct. 845, 849, 78 L. Ed. 2d 663 (1984). "The first sentence [of Rule 61] tells the courts that they are not to take action because of any error 'unless refusal to take such action appears to the court inconsistent with substantial justice.'" 2 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2881 (2d ed. 1995) (quoting Fed. R. Civ. P. 61 (2006) (amended 2007)).

admitted to impeach plaintiff, for it impeached him on a collateral matter.  We turn

now to the prejudicial effect, if any, of the admission of the letter in evidence.").

As the Supreme Court stated in Palmer, "He who seeks to have a judgment set

aside because of an erroneous ruling carries the burden of showing that prejudice

resulted."  318 U.S. at 116, 63 S. Ct. at 482.  "[A]bsent a showing of prejudice,"

however, this court "shall not reverse the judgment of the district court."  Flores v.

Cabot Corp., 604 F.2d 385, 386 (5th Cir. 1979) (per curiam).  In other words, this

court does not "presume[ ]" that prejudicial error occurred at trial.  Morgan v. Sun

Oil Co., 109 F.2d 178, 181 (5th Cir. 1940).

Because the appellant must affirmatively show prejudice, it is incumbent on

the appellant to present this court with a record on appeal adequate to determine

whether the District Court erred and, if so, whether the error was prejudicial.  See,

e.g., id. ("The appellants have brought up only a partial record and there is no way

to determine that the argument of counsel was not supported by or responsive to

the entire record.").  This court cannot analyze error for prejudice in a vacuum

because what constitutes error in the abstract may be inconsequential in light of

the totality of evidence before the finder of fact.  See, e.g., United States v. Borden

Co., 347 U.S. 514, 516, 74 S. Ct. 703, 705, 98 L. Ed. 903 (1954) ("The

Government does not challenge the court's conclusion that on the record

33

conspiracy was not shown, but it insists that error in these rulings precluded establishment of the conspiracy. . . . [E]ven assuming error in each of the challenged rulings, it does not appear that admission of the evidence in question would have been sufficient to change the conclusion that the Government had not established a case under the Sherman Act; hence the rulings cannot be said to have affected substantial rights of the parties[.]"); Flores, 604 F.2d at 386 ("We cannot determine on the record before us whether the plaintiff's case was materially prejudiced by [the trial judge's] comments [regarding prior suits]; Cabot may have clearly demonstrated its nonmanufacture of the ladder hinge assembly completely independently of the court's purportedly erroneous instructions."); Morgan, 109 F.2d at 181 ("[C]ontinuous possession . . . was vital to the claim of the plaintiffs and the jury with all the evidence before them found that these men had not occupied the land.  It is, therefore, apparent that if the court erred in excluding the testimony . . . as to Morgan's occupancy it was error without injury."  (emphasis

added)).[15]  Prudent appellate review, therefore, requires "a careful examination of the record as a whole."  Head, 370 F.2d at 547 (emphasis added).

Thus, in a case where the appellant presents this court with an incomplete trial record, the appellant may be unable to meet her burden of showing prejudice, i.e., that the error was not harmless.  The Flores case best illustrates this principle.  The issue in that products liability case was whether Cabot manufactured the defective ladder hinge assembly that killed Mr. Flores.  Flores, 604 F.2d at 385.  At trial, and over the objection of Mrs. Flores, the District Court informed the jury that Mrs. Flores had sued other defendants who she alleged were liable for Mr. Flores's death.  Id. at 386.  The jury found that Cabot had not manufactured the ladder hinge assembly and was thus not liable.  Id. at 386.  The record Mrs. Flores

---

[15]  So, too, may error be harmless in light of the total course of a trial.  See, e.g., Bell v. Swift & Co., 283 F.2d 407, 409 (5th Cir. 1960) ("[T]he trial judge erred in not requiring the defendant to answer the plaintiff's interrogatories.  But we are bound to disregard any technical errors or defects which do not affect the substantial rights of the parties.  The trial was conducted properly throughout, the jury heard all the evidence, and the plaintiff had a fair and full hearing. . . . Since the appellant has not shown that the error of the trial court resulted in substantial prejudice to him, the decision of the lower court is Affirmed." (citation omitted)); see also Hall v. Tex. & New Orleans Ry., 307 F.2d 875, 879–80 (5th Cir. 1962) ("An argument which may be objectionable on its face, may be valid if it is retaliatory or in answer to some argument made by opposing counsel.  The record in this case does not contain the full arguments of counsel. . . . 'It was the duty of [the appellant] to preserve in the record all matters which might bear upon the errors assigned by it.'" (quoting Peresipka v. Eglin, Joliet & E. Ry., 217 F.2d 182, 186 (7th Cir. 1954)) (footnote omitted)).

presented on appeal contained no trial transcript; it contained only "brief excerpts which contain[ed] the statements of the district court regarding the prior suits and the objections thereto." Id. The Fifth Circuit denied Mrs. Flores a new trial because she demonstrated no prejudicial error. Id. ("Flores bears the burden of persuasion on this appeal . . . ."). The court simply could not determine the effect of mentioning the prior suits, if any, because there was no transcript to indicate whether Cabot had demonstrated independently that it had not manufactured the ladder hinge assembly. Id. (concluding that "[w]e cannot determine on the record before us whether the plaintiff's case was materially prejudiced" after noting that the record does not include a transcript of the proceedings at trial).

Flores, therefore, reinforces the principle that an appellant who argues that the adverse jury verdict was influenced by prejudicial error is bound by the record of the trial as she presents the argument on appeal. If the ground for reversal is the exclusion of evidence, the record the appellant presents must affirmatively show that the jury's verdict was influenced by the exclusion—that the exclusion affected her substantial rights. If the record is incomplete—because, for instance, it lacks a transcript of what other, more persuasive evidence the jury may have heard—the out-of-context appearance of error precludes the appellant from carrying her burden. If there is no basis for the court of appeals to determine the materiality of

an error based on the totality of what transpired before the jury, it cannot say that error was prejudicial.  The proper course in that case, then, is to affirm the District Court.[16]

B.

Turning to the case at hand, what Rosenfeld's motion for a new trial said to the District Court was that the District Court abused its discretion by excluding her expert and that it would be inconsistent with the interest of justice not to grant a new trial because the court's evidentiary ruling had affected her substantial rights.  It is essential to understand what these arguments meant in light of the way the panel decided this case.  Particularly, one must realize that whatever may have

---

[16]  Some courts have held that error can, occasionally, justify the granting of a new trial without a showing that the error influenced the jury's verdict.  The classic example is in a criminal case "where the departure is from a constitutional norm or a specific command of Congress."  Ahlstedt v. United States, 315 F.2d 62, 66 (5th Cir. 1963) (quoting Kotteakos v. United States, 328 U.S. 750, 765–66, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557 (1946)).  There may also be, for example, "arguments so prejudicial in nature as not to require a full examination of all that was said by counsel."  Hall v. Tex. & New Orleans Ry., 307 F.2d 875, 879 (5th Cir. 1962).

As I understand it, the panel in this case did not find that the exclusion of Vournechis's testimony was such an error.  The panel's opinion stands only for the proposition that Vournechis's testimony was necessary to the jury's understanding of one causal link—between a wet floor and a slip—under one of the plaintiff's theories of liability and thus should have been admitted under Fed. R. Evid. 702 and United States v. Frazier, 387 F.3d 1244 (11th Cir. 2004) (en banc).  At most, such a holding speaks to the innate error of excluding Vournechis's testimony; it does not assign any such error to a level of innate prejudice as conceived of by cases like Ahlstedt, Kotteakos, or Hall.

37

transpired before the jury, the panel went about its task without a transcript of the proceedings. To reinforce my point, I will briefly outline the tasks facing the District Court and the panel, respectively, in addressing Rosenfeld's arguments.

1.

The District Court's task in assessing the merits of Rosenfeld's motion for a new trial was two-fold. First, the court had to determine whether the exclusion of Vournechis's deposition constituted an abuse of discretion, i.e., whether the District Court erred in the first place. Second, if it did, the court had to determine whether the error affected Rosenfeld's substantial rights. See Fed. R. Evid. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ."); see also Fed. R. Civ. P. 61 ("[N]o error in admitting or excluding evidence . . . is ground for granting a new trial . . . . that do[es] not affect a[ ] party's substantial rights."). In the District Court's order denying Rosenfeld's motion for a new trial, the reader might discern that the court skipped the first task and proceeded directly to the second, deciding whether its evidentiary ruling had affected Rosenfeld's substantial rights. The court's decision implicitly accepted Rosenfeld's contention that "severe[ ] prejudice[ ]" satisfied the substantial-rights prerequisite to entertain a motion for a new trial, but rejected her argument that the exclusion of Vournechis's deposition testimony had

38

"severely prejudiced" her case.  Rosenfeld v. Oceania Cruises, Inc., No. 08-22174-CIV-KING, slip op. at 1 (May 7, 2010) (Order Denying Motion for New Trial).  In reaching this conclusion, however, the court necessarily took into account the evidence that had been presented to the jury.  The District Court explained that its ruling was based on a " careful review of the record."  Id.[17]  That is, the District Court clearly did not resolve the prejudice issue in a vacuum.

## 2.

The panel's task in reviewing Rosenfeld's arguments on appeal was the same as the District Court's.  The relevant legal standard—specifically 28 U.S.C. § 2111—mandated that the panel review the court's evidentiary ruling.  If the panel found it to be an abuse of discretion, it was to determine whether, in light of the evidence presented to the jury, the ruling had affected Rosenfeld's substantial rights such that a new trial was required in the interest of justice.

## C.

The problem facing the panel reviewing the District Court's ruling for prejudice was that it had an incomplete trial record to examine.  Rosenfeld, perhaps as a matter of appellate strategy, deliberately deprived the panel of what

---

[17]  The "record" in this context—that of a judge issuing an order denying a motion for a new trial in a case over which he presided—necessarily includes everything the jury saw and heard at trial.

the witnesses said to the jury by instructing the court reporter not to provide transcripts of the trial proceedings. What the witnesses said was crucial to the panel's determination of whether justice required a new trial on the ground that the exclusion of Vournechis's deposition affected Rosenfeld's substantial rights; yet Rosenfeld made it impossible for the panel to make that determination. The panel lacked even a transcript of the colloquy that took place between the court and counsel when Rosenfeld's attorney proffered Vournechis's deposition testimony and (presumably) asked the court's permission to read it to the jury.

All Rosenfeld included in the record of what took place in the jury's presence were (1) the District Court's charge on the law before the jury retired to deliberate,[18] (2) a note from the jury indicating that it was deadlocked, and (3) the jury's verdict finding Oceania not negligent. What the panel has done in reversing the District Court's judgment, therefore, is to relieve Rosenfeld of the well-established obligation of showing that the exclusion of the expert's testimony, which she proffered in the absence of the jury, constituted harmful error—that is, the obligation of establishing that the exclusion of the expert's opinion evidence

---

[18] The record does not contain a transcript of the charge; rather, Volume 2 of the Pleadings contains the court's instructions which we assume were read verbatim to the jury.

40

affected her "substantial rights,"[19] i.e., denied her a fair trial. Thus, according to

the panel, this court need not have before it a transcript of what took place before

the jury in order to determine whether the District Court's exclusion of evidence

affected the appellant's substantial rights and entitled her to a new trial because

the error was not harmless.[20]

D.

In the absence of a transcript of what actually took place before the jury, the

panel effectively holds that a court of appeals can imagine what transpired before

the jury in determining whether the exclusion of evidence affected a party's

substantial rights. The court of appeals' imagination in this case was informed by

what took place pretrial—what witnesses said on deposition or by affidavit—and

by what took place before the jury according to Rosenfeld's attorney's

representations in his briefs on appeal.

Rosenfeld's attorney said the following in his reply brief to this court:

> Oceania argues that any error was harmless. This argument is absurd
> because the total exclusion of Plaintiff's slip and fall expert in this
> slip and fall case destroyed Lydia Rosenfeld's right to a fair trial. The
> basis for Oceania's harmless error argument is equally absurd. First,

---

[19] See 28 U.S.C. § 2111; Fed. R. Civ. P. 61.

[20] This proposition presumably applies equally to plaintiffs and defendants who suffered adverse evidentiary rulings.

41

Oceania argues that the weight of the testimony at trial was that the floor was dry. This is incorrect. Oceania put on two witnesses who said that the floor was dry (Oceania employees Kovacevic and Yuskel) and Rosenfeld put on two witnesses who said the floor was wet (Lydia and Alan Rosenfeld). Second, Oceania argues that because the verdict form answered "No" to the first question posed, that means the jury "rejected Rosenfeld's argument that "Defendant's failure to maintain the area in a dry condition or failure to prevent substances from spilling on the surface and causing an unsafe condition" constituted negligence, or was the legal cause of Plaintiff's injuries." This is an absurd and unfair inference. Nonetheless it actually supports Rosenfeld's argument. Because Rosenfeld was not allowed to put on any expert evidence regarding the condition of the subject flooring surface, there was simply no evidence for the jury to have found that the subject floor was [in] an unsafe condition when wet.

Reply Br. at 4–5 (quoting Appellee's Br. at 30).[21]

Remarkably, the panel found reversible error based on such characterization of what transpired at trial—and thereupon authored a published opinion granting Rosenfeld a new trial. The panel essentially accepted one party's briefs as if they were a record of the trial. In doing so, the panel neglected the requirement that an appellant affirmatively show prejudice—which the appellant here deliberately avoided doing by replacing transcribed trial testimony with her appellate lawyer's

---

[21] I should point out that Oceania's attorney, in the appellee's answer brief, did not mention that the appellant failed to include in the record on appeal a transcript of the proceedings before the jury. Rather, he simply replied in kind to what Rosenfeld's attorney said in his opening brief.

say-so representations of what happened at trial. In this respect, the panel erred gravely.

Notwithstanding Congress's statutory command—that a new trial cannot be ordered on the basis of an erroneous evidentiary ruling unless the record of the proceedings before the jury reveals that the error affected the appellant's substantial rights—the panel's opinion is necessarily based on the appellate briefs' characterizations of the trial. The problem, of course, is that the panel could not have made this determination without a record of what the District Court considered in making its rulings. In sum, the panel could not have correctly reversed and remanded this case based on the record before it.

## IV.

The panel's opinion does not announce its own error openly but does so by necessary implication. I believe it to be imperative, however, to warn against the possible misappropriation of the holding implicit in the panel's opinion.

### A.

The form of the opinion is such that a judge or lawyer familiar with § 2111's "examination of the record" mandate is not likely to realize the functional error in the panel's method. Given the manner in which the opinion is crafted, a judge or lawyer reading it could thus be deceived; the reader would conclude that

43

the panel did what courts of appeal always do when an appellant claims, as here, that the District Court's erroneous exclusion of evidence affected her "substantial rights," warranting a new trial because justice requires one.

Nevertheless, what the panel has done becomes apparent upon closer observation. The reader would start where the opinion starts, with a recitation of the facts, and assume that the facts had been established by testimony adduced at trial.

> While a passenger aboard the M/V Nautica, Lydia Rosenfeld slipped and fell on a ceramic tile floor near the buffet bar of the vessel's Terrace Café. She suffered a shoulder fracture and incurred medical expenses as a result of her fall. Rosenfeld brought this diversity action against the operator of the M/V Nautica, Oceania Cruises, Inc. ("Oceania"), to recover damages for her injuries. She claimed, inter alia, that Oceania negligently caused the accident by failing to provide an adequate flooring surface for the buffet area of the Terrace Café.

Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1191–92 (11th Cir. 2011). Next, the reader would follow the opinion's track and find Rosenfeld's proffer of Vournechis's deposition testimony, which the opinion credits as crucial to the plaintiff's case.

> To prove her case, Rosenfeld offered the expert testimony of Peter Vournechis, an Australian floor-safety specialist who performed various coefficient-of-friction tests to determine the slip resistance of the M/V Nautica's flooring surfaces. Vournechis found that, under wet conditions, the ceramic-tile surface surrounding the Terrace Café

44

had an inadequately low coefficient of friction. Thus, he proposed to testify at trial that the flooring surface was not reasonably safe for a self-serve or bistro area, because it posed a high risk for those passing through the Café to slip and fall.

Id. at 1192. The opinion's statement of facts and of the expert's proffered testimony would inform the reader that the court of appeals was doing precisely what § 2111 required; the court was examining the record to determine (1) whether the District Court's exclusion of the proffered testimony constituted an abuse of discretion and, if so, (2) whether it affected Rosenfeld's substantial rights. The reader would find that the opinion addresses the first element thusly: "Rosenfeld argues that the district court abused its discretion by prohibiting her from introducing expert testimony that Oceania's choice of flooring posed a higher danger of slip-and-fall accidents than other surface types." Id. at 1192–93. Then, after informing the reader in passing that the District Court had "entered a pre-trial order precluding Vournechis's testimony," id. at 1192, the reader would see that the opinion returns appropriately to the scene of the trial, indicating once more that the court is reaching its decision based on an examination of the trial record. "At trial, Rosenfeld raised the [Vournechis deposition] issue again, asking the district court to allow her to read Vournechis's deposition to the jury. The

45

court denied her oral motion."[22]  Id.  Immediately following this statement, the opinion moves perfunctorily to the end of the case: "[a]t the close of the evidence, the court instructed the jury."  Id.[23]

The opinion then concludes, in the two passages appearing below, that the District Court abused its discretion by precluding the jury from hearing what Vournechis had to say and that the error was not harmless, meaning that it affected Rosenfeld's substantial rights:

> Because the jury was not allowed to consider evidence about whether the slip resistance of the flooring posed a danger to passengers aboard the M/V Nautica, it could not have found in Rosenfeld's favor with regard to her main negligence theory; matters of slip resistance and surface friction are "beyond the understanding and experience of the average lay citizen."  Accordingly, we conclude that the district court erred by granting Oceania's motion to preclude Vournechis's proposed testimony.

---

[22]  Because the record on appeal does not contain a transcript of the proceedings at trial, the panel did not have a transcript of the colloquy that took place between the court and counsel for the parties when Rosenfeld's attorney asked the court to revisit its pretrial ruling and permit Vournechis's deposition to be read to the jury.

[23]  The opinion quotes a portion of the District Court's instruction (which is not relevant here).  The quotation is not derived from a trial transcript; instead, it is derived from the court's written jury charge which was filed with the clerk and appears in a volume of pleadings.  See Record, Vol. 2, doc. 72.

46

Id. at 1194 (citing United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985)).[24]

> [W]e cannot say that the district court's error was harmless. Because Rosenfeld was not allowed to admit evidence proving the inadequacy of Oceania's choice of flooring surface, the jury could not have found that the floor near the Terrace Café's buffet was necessarily unsafe when wet. Consequently, the jury was not able to consider whether Oceania's choice of ceramic-tile flooring caused Rosenfeld's injuries. This is particularly problematic in light of the negligence instruction given to the jury that "the plaintiff alleges that the injury was caused by Defendant's failure to choose an adequate flooring surface for the area where the accident occurred."

Id.[25]

And so, a reader of the opinion would readily conclude that the court accepted Rosenfeld's argument which was, in the language of § 2111, that the District Court abused its discretion in excluding Vournechis's deposition testimony and should have granted Rosenfeld a new trial because "an examination

---

[24] Since the court made its dispositive evidentiary ruling at trial, when it entertained Rosenfeld's proffer of Vournechis's deposition testimony, we assume that Oceania's "motion to preclude" was, instead, an objection to Rosenfeld's proffer.

[25] The opinion's statement that the plaintiff claimed that her "injury was caused by Defendant's failure to choose an adequate flooring surface for the area where the accident occurred," Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1194 (11th Cir. 2011), implies that the plaintiff claimed that inadequate flooring caused her fall and that the expert's opinion buttressed such a claim. As I explained in part II.D, supra, the claim the expert's opinion addressed was that the floor was slippery when wet—not that Rosenfeld would have slipped on a dry floor. Hence, his opinion would be relevant, and presumably would have assisted the jury, only if the jury found that the floor was wet.

of the record" revealed that the ruling "affect[ed] [her] substantial rights." 28 U.S.C. § 2111.[26] What the reader would not realize is that the facts recited in the opinion and the basis for the not-harmless-error-holding came not from the evidence presented to the jury, but, instead, from the parties' appellate briefs. The reader would have been misled because the reader expected that the panel would base its decision to grant Rosenfeld a new trial on the grounds that the jury was erroneously deprived of an important piece of evidence, the expert's opinion; that the ruling affected her substantial rights; and that justice required a new trial.

### B.

Rosenfeld effectively convinced the panel that she suffered error harmful enough to overturn the jury's verdict—without presenting the panel a record of what the jury heard. Instead, the panel takes the case as the parties have presented it on appeal—with a record consisting only of the parties' representations and deposition testimony that was not admitted into evidence. The panel then lumps the pretrial exclusion of Vournechis's testimony together with the denial of Rosenfeld's proffer at trial and the denial of Rosenfeld's motion for a new trial as equally undifferentiated "error"—each of which carries a different standard of

---

[26] The reader would treat the court's "[w]e cannot say that the district court's error was harmless," Rosenfeld, 654 F.3d at 1194, as the functional equivalent of "affect the substantial rights," 28 U.S.C. § 2811.

review.[27]  What the panel is in effect saying is that excluding Vournechis's

testimony—at any stage of the case—was inherently prejudicial, no matter what

happened at trial and no matter what standard of appellate review applies.

The panel simply could not have decided the prejudice issue on the record

before it.  Consider the gravity of what the panel says regarding the prejudice of

the error in this case:

> Because Rosenfeld was not allowed to admit evidence proving the
> inadequacy of Oceania's choice of flooring surface, the jury <u>could not
> have found that the floor near the Terrace Café's buffet was
> necessarily unsafe when wet</u>.  Consequently, the jury was not able to
> consider whether Oceania's choice of ceramic-tile flooring caused
> Rosenfeld's injuries.  This is particularly problematic in light of the
> negligence instruction given to the jury that "the plaintiff alleges that

---

[27]  Assuming the District Court committed error, there are in fact two distinct grounds that would justify reversal in this case.  The first is the District Court's evidentiary ruling excluding Vournechis's testimony.  We review evidentiary rulings for abuse of discretion.  <u>Proctor v. Fluor Enters., Inc.</u>, 494 F.3d 1337, 1349 n.7 (11th Cir. 2007).  "To gain a reversal based on a district court's evidentiary ruling, a party must establish that (1) its claim was adequately preserved; (2) the district court abused its discretion in interpreting or applying an evidentiary rule; and (3) this error affected a 'substantial right.'"  <u>Id.</u> at 1349 (quoting <u>United States v. Stephens</u>, 365 F.3d 967, 974 (11th Cir. 2004); Fed. R. Evid. 103(a)) (internal quotation marks omitted).  For explanation why the evidentiary ruling at issue in this case was not an abuse of discretion, see <u>supra</u> part II.

The second ground is the District Court's denial of Rosenfeld's motion for a new trial.  We review the denial of a motion for a new trial similarly for abuse of discretion.  <u>Lanham v. Whitfield</u>, 805 F.2d 970, 972 (11th Cir. 1986).  The trial judge abuses his discretion if he grants a new trial when the jury's verdict is not "contrary to the great weight of the evidence."  <u>Williams v. City of Valdosta</u>, 689 F.2d 964, 973 (11th Cir. 1982).

the injury was caused by Defendant's failure to choose an adequate flooring surface for the area where the accident occurred."

Rosenfeld, 654 F.3d at 1194 (emphasis added). The panel's holding means that even if the jury found that the floor was not wet, Vournechis's exclusion was prejudicial error. Even if the jury found that Oceania had no notice that the floor was wet, Vournechis's exclusion was prejudicial error.

Additionally, the substance of Vournechis's testimony was so plainly obvious to an ordinary person that Rosenfeld could not have been prejudiced by its exclusion. Instead, the panel's holding elevates an expression of plain common sense—that a wet tile floor could be slippery and, therefore, dangerous—to a level of paramount importance to Rosenfeld's case. The panel ought not to have done so. Indeed, the District Court's discretion is broader as it relates to excluding expert testimony that falls within the common experience and knowledge of jurors.

This is so because when jurors need no assistance to understand the fact at issue, the expert's testimony may lend undue credence to one party's view of the facts because that testimony bears the imprimatur of an expert. In Pelster v. Ray, 987 F.2d 514 (8th Cir. 1993), for example, a panel of the Eighth Circuit explained in an odometer-fraud case,

50

In this case, any lay person has the ability to compare the odometer readings on two titles, odometer statements, or check-in sheets and decide whether and when the vehicle's odometer had been rolled back. Thus, [an expert]'s testimony that the odometers on 204 U.S. Wholesales cars and 96 other vehicles had been rolled back before those cars passed through South Central was not necessary to aid the jury.

. . . .

The added factor of [the expert]'s position as a "criminal investigator" for the state further increased the danger inherent in his testimony. His testimony is analogous to a police detective testifying that several witnesses had said that a drug dealer was wearing a blue jacket at the time he sold drugs to prove that the dealer had been so attired and that the defendant, who was arrested with a blue jacket, was guilty of distributing illegal drugs.

Id. at 526–27 (citation omitted); see also Evans v. Mathis Funeral Home, Inc., 996 F.2d 266, 268 (11th Cir. 1993) ("In barring the expert's testimony as to the probable effect of each of these factors in causing Evans to fall, the district court first found that the effects of the first three factors (the uneven risers and treads, the brick patio and steps, and the handrail height) were all within the common knowledge of the jurors, and thus the probative value of such testimony was outweighed by the danger of prejudice." (citing Fed. R. Evid. 403)). Cases like these illustrate an obvious principle: the more an expert's testimony relates to common knowledge, the less its exclusion can be said to have prejudiced its proponent's case. Indeed, such was the case here.

In sum, because we do not know what the jury heard, we cannot know whether Oceania established an independent basis for why it was not negligent. Moreover, Vournechis's common-sense observation added virtually nothing to the jury's understanding. The proper holding, as in <u>Flores v. Cabot Corp.</u>, 604 F.2d 385, 385–86 (5th Cir. 1979) (per curiam), is that Rosenfeld has not carried her burden of showing prejudicial error. If the panel's holding is to the contrary—for we cannot know for certain in the absence of evidence that the court recognized the implications of the record before it—the panel's opinion was in error.

V.

Writing this dissenting opinion has been a very distasteful undertaking. I have written it because I am concerned about the integrity of the court as an institution. Rule 35 of the Rules of Appellate Procedure declares that an "en banc . . . rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a)(1)–(2).

A routine "slip and fall" case ordinarily does not present a question of exceptional importance. But en banc consideration of this "slip and fall" case became necessary when the panel refused to grant rehearing. Surely, maintaining

the integrity of the court's decision making process is a matter of exceptional importance.

I respectfully dissent.